FRANCIS T. MULLANEY & others *vs.* MARY F. MONAHAN.

Suffolk.    January 14, 1919. — February 27, 1919.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & CARROLL, JJ.

*Devise and Legacy. Words, "Children."*

The residuary clause of a will was as follows: "All my real and other property I give to my beloved Wife for and during the term of her natural life; and at her death I give the same in equal shares to my several brothers and my sister, to the exclusion of my brother Patrick Mullaney, and to the children of any of said brothers or sister who may have deceased, by right of representation, to the exclusion of said Patrick as heir of my said estate from or through any of my other brethren or sister or their children: to have and to hold the same after the death of my Wife in fee simple as aforesaid." In a previous decision of this court it had been *held* that the words "my several brothers and my sister" meant those of the whole blood and excluded other brothers and sisters of the half blood. *Held*, that the provisions quoted above showed an intention of the testator to postpone the vesting of the remainders until the death of his wife and consequently that the remainders were contingent.

In the same case it was *held* that the word "children" was used in its ordinary sense and excluded grandchildren of the testator's brothers and sister who were the children of deceased children of such brothers and sister.

BILL IN EQUITY, filed on June 5, 1917, by three children of a brother of the half blood of Thomas Mullaney, late of Boston, testate, seeking an accounting as to rents from real estate for-

merly owned by the testator and a construction of his will for the purpose of determining who were entitled to such rents.

At a previous stage of the case it came before this court by a report made by *Wait*, J., upon an interlocutory decree. It was held, in a decision reported in 230 Mass. 245, that the words of the residuary clause of the will of Thomas Mullaney "in equal shares to my several brothers and my sister, to the exclusion of my brother Patrick Mullaney," who was a brother of the whole blood, designated the testator's brothers and sister of the whole blood to the exclusion of other brothers and sisters of the half blood.

At a later stage, after the decision mentioned above, the case was heard by *Jenney*, J., on a receiver's account and the report of a guardian *ad litem* and upon a motion for a distribution of the balance in the hands of the receiver after the allowance of his account. The judge ordered the following final decree:

"First: Under the fifth clause of the will of Thomas Mullaney, the remainder upon the death of his widow, the said Mary J. Mullaney, was contingent, and did not vest until the death of said Mary J. Mullaney in September, 1914.

"Second: Under said fifth clause of said will the word 'children' as used therein included grandchildren; and the children and grandchildren, living at the death of said Mary J. Mullaney, of any brother or sister of the full blood of said Thomas Mullaney who had deceased before the death of said life tenant, took the parent's or grandparent's share in said remainder by right of representation.

"Third: At the death of said Mary J. Mullaney, there were living no brother or sister of the whole blood of said Thomas Mullaney, and only the following children and grandchildren of such brothers and sister, namely, Edward Mullaney and Ida Johnson, children of Edward Mullaney, a deceased brother of the whole blood, and Herbert Henry LeMesurier and Fred C. LeMesurier, grandchildren of Mary Healey, a deceased sister, of the whole blood.

"Fourth: The receiver, heretofore appointed in this case, is ordered, out of the funds in his hands as shown in his account heretofore filed and allowed, to pay to Frederick A. P. Fiske, Esquire, heretofore appointed guardian *ad litem*, seventy-five

dollars in full payment and satisfaction for his services as such guardian.

"Fifth: Said receiver is ordered to pay all the said balance of his said account shown and allowed as aforesaid, less said seventy-five dollars, and amounting to the sum of together with all the interest thereon and all net rents and profits that have accrued since the filing of his said account as follows, namely: To the said Edward Mullaney, Ida Johnson, Herbert Henry LeMesurier and Fred C. LeMesurier in equal shares , the payment to each amounting to

> (A sum to be fixed before entry of decree by the filing of an account by the receiver stating the amount of interest received and the receipts, expenditures and charges of the receiver accruing since the allowance of his last account.)

"Sixth: Upon such payment, said receiver shall be discharged of his trust."

The judge found that the amount in the hands of the receiver was $727.52. At the request of the parties the judge reserved and reported the case for determination by this court, such decree to be entered as justice and equity might require.

The case was submitted on briefs.

*F. G. Cook*, for the children of Edward Mullaney.

*J. F. Ryan & C. M. O'Leary*, for Herbert H. and Fred C. LeMesurier.

*B. A. Levy*, by leave of court filed a brief on behalf of Francis T. Mullaney and others as *amici curiae*.

Rugg, C. J. It long has been and is now a rule in the construction of wills that estates thereby created should be treated as vesting immediately unless the testator has manifested an opposite purpose by the use of clear words. *Boston Safe Deposit & Trust Co.* v. *Blanchard*, 196 Mass. 35, 38, *Welch* v. *Colt*, 228 Mass. 511, 513, 514, and cases collected in each decision. *Weston* v. *Coburn*, 227 Mass. 483, 485. "The cardinal rule in the interpretation of wills, to which all other rules must bend, is that the intention of the testator shall prevail, provided that it is consistent with the rules of law." *McCurdy* v. *McCallum*, 186 Mass. 464, 469. *Ware* v. *Minot*, 202 Mass. 512, 516. *Gorringe* v. *Mahlstedt*, [1907] A. C. 225, 226. If, therefore, the general plan of the

will and the specific words employed disclose a testamentary design to postpone the vesting of the remainder until the happening of a future event, that design must prevail. These principles govern the case at bar.

The questions now presented for decision are, whether Thomas Mullaney in the residuary clause of his will (1) created a vested or a contingent remainder in his brothers and sister of the whole blood, and (2) used the word "children" in a sense broad enough to include grandchildren.

The residuary clause is in these words: "Fifth: — All my real and other property I give to my beloved Wife for and during the term of her natural life; and at her death I give the same in equal shares to my several brothers and my sister, to the exclusion of my brother Patrick Mullaney, and to the children of any of said brothers or sister who may have deceased, by right of representation, to the exclusion of said Patrick as heir of my said estate from or through any of my other brethren or sister or their children: to have and to hold the same after the death of my Wife in fee simple as aforesaid." It was held, when the case was here before as reported in 230 Mass. 245, that the brothers and sisters of the half blood were not included within the scope of this clause.

1. Two desires appear to have influenced the testator in framing this clause. One was to give his wife the use of the remainder of his estate during her life. That desire is neutral so far as concerns the points to be decided. The other dominating desire, and seemingly much the more imperious of the two, was to exclude from all benefaction his brother Patrick. This fixed discrimination is emphasized, not only by excluding him from the classification of his "several brothers and my sister," but by again excluding him from the possibility of receiving anything through inheritance as heir either from any brother or the sister (if one or more should have deceased before the time for final distribution arrived), or from any child of such deceased brothers or sister. This ruling purpose can be given effect much more easily by treating the remainder as not vesting until the death of the wife. If the remainder be regarded as vesting at the death of the testator, it of course would vest as absolute in remainder subject only to the life estate of the wife. It would be difficult, if not impossible, to prevent its descent to all the heirs of a deceased intestate brother

or sister by qualifying this absolute right by the exclusion of
Patrick as an heir. An absolute gift or conveyance cannot read-
ily be cut down by subsequent inconsistent qualifying words.
*Kelley* v. *Meins,* 135 Mass. 231. *Kemp* v. *Kemp,* 223 Mass. 32.
*Sherburne* v. *Littel,* 220 Mass. 385, 388. *Davis* v. *Davis,* 225
Mass. 311. *Ide* v. *Ide,* 5 Mass. 500. If it be treated as vested,
then any one of the brothers or the sister who survived the testa-
tor might sell his interest in the land and it would be hard, if not
wholly impracticable, to trace the fund into which the remainder
thereby might be converted. Moreover, the intention to exclude
his brothers and sisters of the half blood would be more certainly
executed by treating the remainder as contingent until the ter-
mination of the life estate. The presumption that a vested re-
mainder is intended gains strength from the fact, when it exists,
that the provision is for the benefit of direct descendants. *Boston
Safe Deposit & Trust Co.* v. *Nevin,* 212 Mass. 232, 238. That
factor is absent here. The gift over being to the survivors of a
class, its members cannot be ascertained with certainty until the
end of the life estate. *Smith* v. *Rice,* 130 Mass. 441. The idea of
contingency springing from the main plan to exclude Patrick is
confirmed by the words that the habendum is to take effect "after
the death" of the widow and that the gift over is "at her death."
*Heard* v. *Read,* 169 Mass. 216. *Wason* v. *Ranney,* 167 Mass. 159.
*Hall* v. *Farmer,* 229 Mass. 103. The gift over, being in substance
and effect to the survivors of a class, has a tendency to indicate
the time of the widow's death as the moment for vesting. *Coveny*
v. *McLaughlin,* 148 Mass. 576. *Sias* v. *Chase,* 207 Mass. 372,
375. It follows that the remainder did not vest until the death
of the widow.

2. The meaning of the word "children" in the residuary clause
in our opinion excludes grandchildren who are the children of
deceased children. The ordinary signification of "child" or
"children" is immediate offspring in the first degree as distin-
guished from more remote descendants. *Houghton* v. *Kendall,*
7 Allen, 72, 75. *Bigelow* v. *Morong,* 103 Mass. 287. *Davis* v.
*New York Life Ins. Co.* 212 Mass. 310, 313. *Boston Safe Deposit
& Trust Co.* v. *Nevin,* 212 Mass. 232, 236, 237. See *Welch* v.
*Colt,* 228 Mass. 511, 514; *Adams* v. *Law,* 17 How. 417. This is
its primary sense. Cases have frequently arisen, however, where

a more generous significance has appeared to be required in order
to carry out a presumed testamentary design and to prevent
what was thought to be the unintended disinheritance of grand-
children whose parents have deceased.   In such instances the
word has been treated as comprehending grandchildren or as
equivalent to issue.   *Bowker* v. *Bowker,* 148 Mass. 198, 203.   *In
re Smith,* 35 Ch. D. 558.   *In re Gorringe,* [1906] 1 Ch. 341.   The
true rule for interpreting the word is the familiar rule which pre-
vails as to the construction of wills.   The fundamental object is
to ascertain the real purpose of the testator from all the sentences
and words he has used, giving them so far as possible their natural
meaning and common signification, but reading them in the light
of their context, of the knowledge of material surrounding facts
possessed by the testator at the time he executed the instrument,
and of the subject matter and the persons to whom his language
is to be applied, all construed to effectuate, so far as reasonably
practicable, the general and dominating testamentary aims.
Under this rule words are not to be extended beyond their or-
dinary sense unless otherwise the manifest wish of the testator
will be thwarted.   In the case at bar there are children of a de-
ceased brother to take, and it is not necessary to expand the
meaning of the word in order to carry out the will.   The word
does not here refer to descendants of the testator, but to collat-
eral kindred.   There is nothing about the will importing an in-
tention to use the word in any other than its ordinary sense.
The circumstance that the remainder created by the clause is
contingent rather than vested tends toward the conclusion that
the word "children" was used in its common meaning.   No irra-
tional result follows from interpreting the word in the usual way.
So far as can be discerned from other parts of the will, it well
may be that the testator intended precisely the distribution which
will follow from attributing to the word its accurate and popular
significance.   No phrase or expression can be laid hold of as in-
dicating an opposite purpose.   The case on this point falls within
the class of cases illustrated by *Houghton* v. *Kendall,* 7 Allen, 72,
and the other cases heretofore cited with it.   *Lawrence* v. *Phillips,*
186 Mass. 320.   *Bragg* v. *Carter,* 171 Mass. 324.   *In re Atkinson,*
[1918] 2 Ch. 138.   See *Small* v. *Jose,* 86 Maine, 120, and *Winsor*
v. *Odd Fellows' Benefit Association,* 13 R. I. 149, 150.

The result is that the order for a decree must be modified by striking out paragraphs Second, Third and Fifth, and by substituting paragraphs omitting all reference to the grandchildren and excluding them from the distribution. The details of the decree are to be fixed in the Superior Court.

*So ordered.*