HIRSH et al. v. UNITED STATES.

Court of Claims. December 2, 1929.

No. E–284.

Goodwin, Bresnahan & Johnston, of Washington, D. C., for claimant.

Before BOOTH, Chief Justice, and GREEN and GRAHAM, Judges.

GREEN, Judge. This is an action by executors to recover an estate tax of $9,275.62, with interest, paid by them under protest. Their application for refund was seasonably made, but was rejected by the Commissioner of Internal Revenue. Plaintiffs' decedent, Morris M. Hirsh, died on April 29, 1920.

About six months prior to his death the decedent had entered into four separate agreements, one with each of his four children, three daughters and a son, all bearing date November 1, 1919, and identical except as to name. Each of said agreements recited decedent's desire to make a gift of $50,000 to the child therein named "save and extent to the amount necessary to purchase an annuity to be paid by" (naming the child with whom the agreement was made) to decedent's wife, "Amalie Hirsh, of the sum of two thousand dollars ($2,000) for and during each year of the life of Amalie Hirsh, namely, one thousand dollars ($1,000) on the first day of May and one thousand dollars ($1,000) on the first day of November of each year hereafter; and if Morris M. Hirsh should survive said Amalie Hirsh, then a like sum of money on the first day of May and November of each year after the death of said Amalie Hirsh

for and during the life of Morris M. Hirsh." The agreement continued:

"Now therefore, it is agreed that in consideration of the transfer of securities of the value of fifty thousand dollars ($50,000.00) by said Morris M. Hirsh to said" (naming the child with whom such agreement was made), "the amount of which save such amount as is a reasonable and proper consideration for the payment of the annuity hereafter mentioned is hereby paid over and transferred as a gift."

The child named respectively in each of said four agreements then thereby agreed "to pay to said Amalie Hirsh, on the first day of May and on the first day of November of each year hereafter, only, however, that said Amalie Hirsh is then living, the sum of one thousand dollars ($1,000.00); and should Morris M. Hirsh survive said Amalie Hirsh then in such case said" (naming the child with whom the agreement was made) "agrees to pay after the death of said Amalie Hirsh to said Morris M. Hirsh on the first day of May, and on the first day of November of each year thereafter, only, however, that said Morris M. Hirsh is then living, the sum of one thousand dollars ($1,000.00)."

These four agreements were all signed by Morris M. Hirsh and one by each of the children with whom each agreement was separately made, respectively. Pursuant to these agreements securities of the value of $50,000 were transferred to each of decedent's four children—an aggregate of $200,000. The value of the securities transferred to the children as aforesaid was at the time of said transfer and of the decedent's death $200,000, and the rate of interest in the securities so transferred was 6 per cent. per annum.

At the time the said contracts of November 1, 1919, were made each of the said four children was financially able, in his or her own right, to pay the agreed annuity, regardless of said securities.

When plaintiffs made return for the estate tax they did not include in the value of the gross estate the value of any of the four transfers, or any part of them, and upon audit of the return the Commissioner of Internal Revenue held that the transfer of the securities in the sum of $50,000 to each of the children was in part a transfer intended to take effect in possession or enjoyment at or after the death of Morris M. Hirsh, within the meaning of section 402(c) of the Revenue Act of 1918, 40 Stat. 1057, 1097.

The Commissioner determined this value to be two-thirds of the amount of $200,000, or $133,333.33, as being the sum which invested at 6 per cent. would produce an annuity of $8,000 per annum (each child stipulating to pay $2,000 as stated). The sum of $133,333.33 was accordingly included in the value of the gross estate. The additional estate tax caused by such inclusion is the basis of the present suit.

The Commissioner determined that decedent did not make any of the transfers here involved in contemplation of death, and based his action on section 402 of the Revenue Act of 1918, 40 Stat. 1097, which provides, in part, as follows:

"That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, * * * intended to take effect in possession or enjoyment at or after his death * * * except in case of a bona fide sale for a fair consideration in money or money's worth."

In order that the issue which arises in this case may be clearly understood, it should be stated that, while the findings show that there was also a transfer made by the decedent to his wife of securities of the value of $200,000, as a gift, the Commissioner held that the transfer made by decedent to his wife was not made in contemplation of death and formed no part of his taxable estate. The findings show in detail the proceedings with reference to the collection of the estate tax involved in the case, including the filing of a plea in abatement and also a claim for refund, but it is only necessary to state here that all questions relating to this transfer to decedent's wife have been eliminated from the case. The controversy herein relates entirely to the transfers made to the children of decedent, as above set forth; and, as before stated, it is conceded that these transfers were not made in contemplation of death. The sole question remaining in the case is whether after this transfer to his children the decedent retained any interest in the securities so transferred, or control over them, or created a trust "intended to take effect in possession or enjoyment at or after his death," so as to bring the securities within the purview of subdivision (c) of section 402.

Upon no logical theory can it be claimed that the transfer of the securities was not intended to take effect in possession or enjoyment until at or after decedent's death. The

transfer was complete upon the execution of the contract and was absolute and without reservation. The transferees entered at once into the possession and enjoyment of the securities. There was no restriction placed upon their sale or disposal. The transfer was absolute, and decedent completely and irrevocably divested himself of all title, right, or interest in the securities conveyed. It is clear also that the securities were not chargeable with the annuity. Each of the four children was personally obligated to pay a specified annuity regardless of whether any return was received from the securities and each child was financially able to pay the annuity. The decedent had no control whatever over the property conveyed after the transfer, nor did he have any power to change the terms or provisions of the annuity which had been contracted for in the case of each child.

 There seems to us to have been a misunderstanding on the part of the Commissioner as to the effect of the contract. No trust was created thereby. The agreement in each case provided for two things—first, for a gift of a certain amount in the form of securities; second, for the purchase of an annuity, the purchase price not being computed but specified as "such amount as is a reasonable and proper consideration for the payment of the annuity hereafter mentioned." It is true that this is indefinite, but, being something that could be made certain, its indefiniteness did not invalidate the agreement, and in fact no claim of that kind is made on behalf of defendant. It is, we think, obvious that, if the decedent had purchased separately the annuities, either of some insurance company or of some of his children, and then given the remainder of the property covered by the agreement to his children, no claim could reasonably be made that any of the property so used was subject to the estate tax on the death of decedent. The annuities in this case terminated upon the death of the decedent, as annuities usually do, although the termination thereof, of course, depends on the contract. The fact that the decedent chose to unite the gift with the purchase of the annuities in one transaction, and that the parties to the agreement did not compute and specify, in dollars and cents, the amount paid for the annuities does not, in our opinion, alter the nature of the transaction.

The defendant relies upon the case of Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 125, 73 L. Ed. 410. In that case the property held to be taxable as part of the estate of the decedent had been conveyed by him in his lifetime in trust, reserving the income therefrom for the period of his lifetime and also the right to revoke the trust. It will be readily seen that the decedent in that case did not part with his interest in the property completely, but on the contrary still retained control of it. The case is therefore not an authority for holding that the property involved in the case at bar is subject to the estate tax.

Counsel for defendant lay much stress upon the language of the decision in the Northern Trust Co. Case, supra, wherein, with reference to certain other trusts also involved, the Supreme Court said:

" * * * The trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute."

But this language should not be construed as a holding by the Supreme Court that, whenever a decedent in his lifetime has made a contract which will or may in the future inure to his own benefit, property conveyed as a consideration for such contract is subject to the estate tax. The emphasis should be not upon the words "might inure to his own benefit," as contended on behalf of defendant, but upon the words "had passed as completely from any control by decedent * * * as if the gift had been absolute." The important feature is that the property had passed entirely out of the control of the decedent, as it had in the case at bar, where he had no control over either the property which was conveyed or the terms and conditions of the annuity after the agreement had been made. It should be noted also that the decision in the Northern Trust Co. Case was made upon an altogether different state of facts.

It is said in the argument for defendant that the control considered in the Northern Trust Co. Case and held to authorize an excise tax was an unexercised right to shift the economic benefits of the property. Conceding for the sake of the argument that this is a correct statement, we find that the decedent, after the execution of the agreement, had no unexercised right in the property conveyed. Nothing that he could thereafter do would change the contract for his benefit or advantage in any kind of a way. As before stated, the case presented is simply one where a gift and purchase of an annuity were combined.

It follows that plaintiff is entitled to recovery as prayed in the petition, and judgment will accordingly be so rendered.

BOOTH, Chief Justice, and GRAHAM, Judge, concur.

WILLIAMS and LITTLETON, Judges, did not hear and took no part in the decision of this case.