**WELCH v. HALL et al.**
No. 3836.

Circuit Court of Appeals, First Circuit.
March 22, 1943.

See, also, D.C., 373 F.Supp. 788.

Samuel H. Levy, Sp. Asst. to the Atty.. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, Morton K. Rothschild, and Frederic G. Rita, Sp. Assts. to the Atty. Gen., and Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., for appellant.

Claude R. Branch, F. H. Nash, and John Dane, Jr., all of Boston, Mass., for appellees.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

In a trial before a jury the executors of the will of Sarah C. Sears recovered judgment in the sum of $27,008.72 for an alleged deficiency in estate taxes which they had paid to the Collector of Internal Revenue. The question before us on this appeal is whether personal property transferred by the decedent to her daughter, Helen Sears Bradley, should have been included in the decedent's gross estate under Section 302(c) of the Revenue Act of 1926, 44 Stat. 9, as amended by Section 803(a) of the Revenue Act of 1932, 47 Stat. 169, 26 U.S. C.A. Int.Rev.Acts, pages 227, 228.[1]

---

[1] "Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

* * * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, * * * to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by

Another issue concerning the proper valuation of certain real estate belonging to Mrs. Sears at the date of her death was also decided adversely to the appellant in the court below but this issue is not before us on this appeal. We, therefore, give it no further consideration.

On February 19, 1932, Mrs. Sears delivered to her daughter, Mrs. Bradley, a bill of sale[2] covering certain household furniture and other articles of personal property located in her home at 12 Arlington Street, Boston. Mrs. Bradley, in consideration of the gift to her by her mother executed another instrument[3] in which she promised that if the proceeds of the sale of the securities and other personal property in the estate of Mrs. Sears were insufficient to pay certain taxes, she would sell so much of the personal property given her as requested by the executors of Mrs. Sears. It has been stipulated that the fair market value at the time of Mrs. Sears' death of the property transferred to Mrs. Bradley was $55,724.46. There was other property in the house belonging to Mrs. Sears which was excluded from the bill of sale. Both Mrs. Sears and Mrs. Bradley lived in the house on Arlington Street. Mrs. Bradley had lived in this house practically all of her life including most of her married life. Evidence was introduced to show that upon the death of her husband she was restless and as an inducement for her to live in the house, her mother made this gift to her. In the spring of 1932, after the gift was made Mrs. Bradley took a great deal of furniture, hangings and various things from 12 Arlington Street to her summer home in Southborough. She also took pictures from the house and gave articles of personal property to her son who was entering college. Her mother knew of this disposition of these articles and made no objection nor was any permission asked. She also took to Paris pictures which were included in the property given to her in the bill of sale and exchanged them for certain water colors. This she did without any objection from her mother. Mrs. Sears, subsequent to the execution of the bill of sale, built a house in Maine and completely furnished it but removed no furniture from the house at 12 Arlington Street. When the bill of sale was sent by her attorney to Mrs. Sears, it was accompanied by a letter, the last paragraph of which stated:

"Inasmuch as you are making an outright gift to Mrs. Bradley so that the property becomes hers irrevocably it might be well for Mrs. Bradley to change her will in such a way as to leave the property to you in case she should die first, because otherwise someone other than Mrs. Bradley would be owning the personal property in your house. In all probability those persons would be Mrs. Bradley's two children, but that would not necessarily be so."

A copy of this letter was sent to Mrs. Bradley with the suggestion that she change her will and name her mother legatee of this property. She made a new will but left the personal property in question to her sons and not to her mother. On cross-examination it was shown that the assessors of Boston continued to assess the personal property as belonging to Mrs. Sears, and taxes upon this personal property were

trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, * * *".

[2] A portion of the bill of sale reads as follows:

"I acknowledge that I have delivered to my said daughter actual possession of all the articles of personal property hereby transferred for the purpose of vesting in her full and complete title thereto to have and to hold the same to my said daughter and her executors, administrators and assigns to their own use and benefit forever."

[3] "Whereas by instrument of even date herewith my mother, Sarah C. Sears, has transferred and delivered to me various articles of personal property now located in the residence at 12 Arlington Street, Boston, Suffolk County, Massachusetts, now occupied by my mother and myself.

"Now Therefore in consideration of the above mentioned transfer I, Helen Sears Bradley of Southborough, Worcester County, Massachusetts, do covenant and agree with my mother, said Sarah C. Sears, and her executors and administrators, that if the proceeds of sale of the securities and other personal property in her estate shall be insufficient to pay all legacy, succession, inheritance and estate taxes which may be payable by her executors or administrators out of her estate then and in that event, if her executors or administrators so request, I will sell such of the articles of personal property transferred to me under said instrument as may be necessary to meet the deficiency and apply the proceeds thereof to the payment thereof * * *".

paid out of the Sears Estate as was the insurance.

At the close of appellees' testimony, counsel for the appellant moved to dismiss the complaint on the ground that the appellees failed to make out any cause of action. This motion was denied. After counsel for appellant rested, he moved for a direction of a verdict on the same grounds as those contained in his motion to dismiss the complaint. This motion was also denied. The district judge in his charge asked two questions of the jury, only one of which is pertinent in a consideration of this case. "Under such contentions as are open to the parties hereto at this time, should the personal property purporting to be transferred by the instrument executed by Sarah C. Sears on February 19,1932, be included in her gross estate for the purpose of computing the Federal estate tax on her estate?" This question was answered in the negative.

Appellees contend that the judgment of the lower court should be affirmed on the ground that the appellant has not taken the procedural steps requisite for a reversal of the judgment for the appellees. The view we take of this case makes a consideration of the procedural matters here involved unnecessary.

 The jury by its answer to the question asked of it concerning the transfer of the personal property showed that it was of the opinion that Mrs. Sears had unequivocally given Mrs. Bradley the personal property and that she completely relinquished control and dominion over it. There was sufficient evidence from which the jury might have drawn this conclusion. The appellant cannot now argue that Mrs. Sears retained control of the personal property at 12 Arlington Street after the date of the alleged transfer. Appellant contends, however, that the court below should have ruled as a matter of law that the effect of the instrument signed by Mrs. Bradley on the same day that the bill of sale was signed by Mrs. Sears, was to place upon Mrs. Bradley the obligation to keep the property intact until after the settlement of Mrs. Sears' estate, and that since Mrs. Bradley was required to retain the property until the death of her mother, the transfer falls within Section 302(c), citing in this connection Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368. We are of the opinion that the district judge was correct in re-

fusing to give this interpretation to the instrument in question. It is true that the bill of sale executed by Mrs. Sears and the instrument signed by Mrs. Bradley were contemporaneous and should be considered as a single transaction, but we believe that the interpretation contended for by appellant is untenable. In the instrument signed by Mrs. Bradley there is no express promise on her part to hold the property given her until her mother's death; nor do we believe that it was intended that such a restriction should be imposed. We intimate no opinion as to whether such a restriction, if it were clearly and unambiguously stated, would be valid under Massachusetts law, although it seems clear that the Massachusetts Supreme Judicial Court does not look with favor upon restraints against the alienation of property. As was said in Mills v. Blakelin, 1941, 307 Mass. 542, 30 N.E.2d 873, 875:

"But it is unnecessary to refer to other provisions concerning the management of the property because, as the ownership in fee was given to the children at the death of their mother, their estate cannot be cut down by subsequent provisions repugnant to or inconsistent with their devises. Kelley v. Meins, 135 Mass. 231; Damrell v. Hartt, 137 Mass. 218; Merrill v. Webster, 187 Mass. 562, 73 N.E. 672; Pitts v. Milton, 192 Mass. 88, 77 N.E. 1028, 116 Am.St.Rep. 223; Galligan v. McDonald, 200 Mass. 299, 86 N.E. 304, 128 Am.St.Rep. 421; Davis v. Davis, 225 Mass. 311, 114 N.E. 309; O'Reilly v. Irving, 284 Mass. 522, 188 N.E. 253."

See, also Lathrop v. Merrill, 1910, 207 Mass. 6, 92 N.E. 1019, and Mullaney v. Monahan, 1919, 232 Mass. 279, 122 N.E. 387. The evidence is clear that the parties did not believe that any restraint was placed upon the personal property given. In fact, Mrs. Bradley with the apparent approval of Mrs. Sears disposed of some of the personal property in question and used the remainder as she chose without any interference by her mother. The construction of the instrument by the attorney who drew it that Mrs. Bradley was the complete owner of the personal property, is highly persuasive in that it shows the contemporaneous understanding of the parties of the instrument in question.

In Reynolds v. Maust, 1940, 142 Pa.Super. 109, 15 A.2d 853, 854, a case in which the facts are similar to those before us, a donor gave two bonds to her son and signed

the following writing: "Walker, you sell the two bonds I gave you, pay my funeral expense after I am gone, and the balance remaining belongs to you." The court said (15 A.2d at page 854):

"The writing of July 1, 1929, does not expressly direct, nor does it even indicate that Walker was to wait until the donor's death to dispose of the bonds. He could have done that forthwith."

While the court recognized the validity of the son's obligation, it refused to read a restraint upon the disposal of the bonds into the instrument signed by the donor. It might have been argued in that case, as here, that the donee was required to retain the property for otherwise he might squander or give away the proceeds from its sale and thus be in no position to carry out the intention of the donor. Nevertheless, we see no reason why in a transaction such as this, where there has been an unequivocal transfer, we should encumber the property given by restrictions not expressly stated in the instrument. What was given in the case before us were household possessions which had more than a pecuniary value. We do not believe that the parties supposed that Mrs. Bradley once she came into possession of the property would seek to dispose of it. The fact, therefore, that Mrs. Bradley in the instrument which she signed said that she would sell it if requested by the executors of Mrs. Sears is not an express statement showing that Mrs. Bradley was required to hold it. In the normal course of events, Mrs. Bradley unquestionably would retain the personal property except for minor dispositions in her lifetime.

■ The obligation imposed upon Mrs. Bradley by the instrument which she signed was a promise to pay certain taxes of the estate of her mother, if requested to do so by the executors, and her maximum liability was measured by the value of the personal property given her. This promise, if it had any value, was unquestionably includible in the gross estate of Mrs. Sears. It does not follow that because a contractual obligation was imposed upon Mrs. Bradley, the property transferred was a part of the gross estate of Mrs. Sears. We conclude that Section 302(c) has no application to the facts before us.

The judgment of the District Court is affirmed.