**GARDNER et al. v. DELANEY.**

Civ. A. No. 50–283.

United States District Court
D. Massachusetts.

Feb. 27, 1952.

Earle W. Carr and Gaston, Snow, Rice & Boyd, all of Boston, Mass., for plaintiffs.

George F. Garrity, U. S. Atty., and Philip T. Jones, Asst. U. S. Atty., Boston, Mass., for defendant.

FORD, District Judge.

Plaintiffs bring this action as executors under the will of Olga E. Monks to recover a portion of the taxes paid on her estate to defendant as Collector of Internal Revenue for the District of Massachusetts. Mrs. Monks died on April 22, 1944. Plaintiffs having been appointed as executors of her will filed an estate tax return of her estate on July 20, 1945 and paid the tax shown to be due by the return. Thereafter, the Commission of Internal Revenue disallowed a deduction taken in the return for amounts distributed to certain religious and charitable institutions, and also held that certain property transferred by decedent to Roque Island Gardner Homestead Corporation, and not included in the estate in the return, was properly includable in the gross estate. Deficiencies in the estate tax based on these determinations with interest thereon were paid by plaintiffs in 1946 in the total amount of $64,216.71. On September 13, 1949, plaintiffs filed with defendant a claim for the refund of this amount, and this claim was disallowed in full on February 16, 1950 by the Commissioner of Internal Revenue.

The Charitable Contributions.

The last will of Mrs. Monks, dated March 18, 1939 and allowed by the Probate Court for Suffolk County, Massachusetts, on May 18, 1944, provided in Article Second as follows: "I give to my executors or administrators with the will annexed One Hundred Thousand (100,000) Dollars, not

subject to any trust, but in the hope that they will dispose of it at their absolute discretion and according to their own judgment, but giving due weight to any memoranda I may leave or any oral expressions by me to them made during my life."

Mrs. Monks also left a memorandum and an accompanying letter dated March 18, 1939, which, on May 24, 1946, were allowed by the Probate Court as part of the will of Mrs. Monks. This letter reads as follows:

"March 18th 1939.

"Dear Gardner, John & Peabody

"I am making a new will as the times seem to call for simplification.

"In it I have left to my Executors the sum of one hundred thousand dollars ($100-000) cancelling in my will any specific gifts to individuals (apart from my immediate family) and institutions. I have purposely not bound you to carry out any wishes I may express for I can not foresee the future and have confidence that you will act wisely. and will do as seems best, and possible, when the time comes. I am, however, enclosing a list, of persons and institutions, who I should like to remember and the amounts I have assigned would at this time seem to me to be suitable, but as I have already said you are free to disregard my suggestions.

"Affectionately

Olga E. Monks"

The memorandum consisted of a list of names of persons (servants, friends and god-children of Mrs. Monks) and institutions, with an amount of money written beside each name. The total of these amounts was somewhat less than $100,000.

Mrs. Monks' will named as executors her two sons, George Gardner Monks, a clergyman, and John Peabody Monks, a practising physician, and her nephew, George Peabody Gardner, Jr., who had handled her business affairs for many years. John Peabody Monks later resigned as executor because of his absence from the United States on service with the Navy.

Mrs. Monks had discussed her will with the three executors at various times during the year preceding its execution. They knew at least in general outline what its

terms would be and particularly they knew that they would be the executors and that a sum such as that given by Article Second would be left to them for them for distribution. Each of them had promised Mrs. Monks that he would carry out her wishes in regard to this money as closely as possible under the circumstances existing at her death and that he would not regard this money as having been left for his personal use. They had also requested her to leave a written statement of her wishes to serve as a guide to them. It was in reliance on these promises and in compliance with this request that Article Second was inserted in her will and the accompanying letter and memorandum were written. This device was suggested to Mrs. Monks by George Peabody Gardner, Jr., as a means of simplifying her will and making provisions for changes in circumstances subsequent to its execution. He also had told her in the course of their conversations on the subject that it was unlikely that there would be any material changes affecting the amounts designated for charitable institutions.

The executors in general followed the memorandum in making payments to the individuals named therein, with such changes as they thought justified by changed conditions, such as the fact that an individual named had died or was no longer employed by Mrs. Monks at the time of her death. The memorandum listed eight funds or institutions of a religious or charitable nature. The total of the amounts indicated for these was $35,000. The executors determined that there had been no change in conditions with respect to these charities and paid these amounts exactly as set forth in the memorandum. It was the deduction of this sum of $35,000 in the return which was disallowed, and which forms the basis of this aspect of the plaintiffs' claim in the present suit.

It is agreed that the recipients of these payments were recognized charities within the meaning of § 812(d) of the Internal Revenue Code, 26 U.S.C.A. § 812(d), and that if specific bequests had been made to them in the will, the amount of these bequests would be deductible from the gross estate. But the United States contends that

such deduction should not be allowed in the present case because there was no specific bequest to these charities and no legal obligation imposed on the executors to make the payments *to them.*

It is clear that in its express terms Article Second of the will provides for a bequest absolute in form to the executors. But it seems equally clear that it was the intention of the testatrix that this bequest was not made for the purpose of personally enriching the executors. The precatory words of Article Second, together with the letter and memorandum allowed by the Probate Court as part of the will, indicate a very definite plan for the distribution of this money, subject to variations at the discretion of the executors. There is then a bequest absolute in terms to the executors, joined with precatory words and memoranda showing a desire that the money be distributed for the benefit of others, and a promise made by the recipients of the bequest and relied upon by testatrix that they would take it not for their own personal use but for the benefit of the designated beneficiaries.

 On these facts, it seems reasonably clear that the Massachusetts courts would hold that the bequest thus coming into the hands of the executors was held by them upon a constructive trust for the designated beneficiaries. This is certainly the prevailing rule of law in other jurisdictions. Scott on Trusts, § 55.1. It has been repeatedly recognized as such by the Massachusetts courts, even though no case has been found in which the exact point here involved was presented for decision. Kerwin v. Donaghy, 317 Mass. 559, 569, 59 N.E.2d 299; Beals v. Villard, 268 Mass. 129, 132, 167 N.E. 264; Taber v. Shields, 258 Mass. 511, 512, 155 N.E. 643; Ham v. Twombly, 181 Mass. 170, 172, 63 N.E. 336; Bennett v. Littlefield, 177 Mass. 294, 298, 58 N.E. 1011; Olliffe v. Wells, 130 Mass. 221, 224; Glass v. Hulbert, 102 Mass. 24, 39. In the light of these cases, it would appear that the Massachusetts courts, if confronted with the present situation, would hold that there was an enforceable trust in favor of the charities named in Mrs. Monks' will, and, in the absence of any

change in the nature and purpose of the charities as would justify the executors to exercise their discretionary right to refuse payment, would compel the payments to be made.

The $35,000 involved was actually paid to the charities. While it did not pass by a bequest in express terms under the will of Mrs. Monks, it did pass to them from her estate by a transaction which in substance was the same. It was the expressed desire of Mrs. Monks that they should receive it. As a result of her will and of the promise which she had obtained from her executors, the charities had a legally enforceable right to receive the money. Regardless of the legal formulas employed, what Mrs. Monks wanted to do, and what she actually succeeded in doing, was to make a gift at her death of $35,000 from her estate to recognized charities. Her executors should be allowed to deduct that $35,000 as a charitable gift for tax purposes.

## The Roque Island Property.

 A number of small islands off the coast of Maine had been owned since 1805 (except for an interval of a few years from approximately 1870 to 1882) by members of the family of Mrs. Monks. In 1939, they were owned by Mrs. Monks and her nephew George Peabody Gardner as tenants in common. These islands altogether contain about 2400 acres of land, about half of this being included in the largest of them, Roque Island. On Roque Island are found the main homestead, three smaller houses, and some farm buildings. The islands have always been available as a summer home for the use of the owners and members of their families. Some income is derived from farming carried on on the island, especially the raising of sheep and cattle, also from the sale of pulpwood and from the operation of fish weirs. The income from these activities has never been sufficient to cover the expenses of the island.

In 1940, Mrs. Monks and her nephew, acting under provisions of Chapter 70 of the Revised Statutes of Maine, authorizing the creation of non-stock corporations "for the purpose of preserving and maintaining a family homestead and the rights of de-

scendants and of members of the family therein", caused the Roque Island Gardner Homestead Corporation to be organized, and sold to it Roque Island and the other islands of the group, together with the buildings and property thereon. They further transferred to it without consideration certain money and securities which would provide a fund for the maintenance of the property. These transfers were treated as taxable gifts and a gift tax was paid thereon. It is with this property thus transferred to the corporation by Mrs. Monks on and after November 1, 1940 that we are here concerned. It is the contention of the United States that the sum of $125,-640.06, the adjusted value of this property at the date of Mrs. Monks' death, should be included in her gross estate as a transfer of property with possession or enjoyment or the power to change the enjoyment retained by the decedent within the meaning of § 811 of the Internal Revenue Code, 26 U.S.C.A., § 811.[1]

The Certificate of Incorporation of the Roque Island Gardner Homestead Corporation stated that "The purposes of said corporation are preserving and maintaining the Gardner family homestead on Roque Island, Washington County, Maine, or other buildings thereon and also such other adjoining islands and lands to be used therewith as the corporation is able to maintain, and the rights of descendants and of members of the family therein, for the benefit of certain issue of George Augustus Gardner."

Articles I and VII of the by-laws of the corporation are as follows:

"Article I.

"The members of the Corporation shall be the incorporators and certain issue of George Augustus Gardner.

"Membership of present and future members shall be for life, or until failure for two successive years to pay the annual rental fixed by the Directors. There shall not be more than eight members at any one time. Vacancies in membership to be filled by the remaining members, from the issue of Olga Eliza Monks and George Peabody Gardner, grandson of George Augustus Gardner, giving preference to the issue of the late member if deemed advisable, or from any descendant of George Augustus Gardner; if none takes, from the existing members, who thereafter may have one vote for each membership held by him or her.

"Article VII.

"The By-Laws may be amended by the members at any meeting of the Corporation or by the Directors at a meeting for which

---

1. "§ 811. *Gross estate*

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \*

"(c) *Transfers in contemplation of, or taking effect at death.* To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

"(d) *Revocable transfers*

"(1) *Transfers after June 22, 1936.* To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death; \* \* \*."

thirty days' notice has been given to all members of the Corporation."

The original members were the decedent and her three children, her nephew, his wife and his son, and Samuel Vaughn, an attorney related by marriage to the decedent. Mrs. Monks was a director of the corporation. This situation continued without change until the death of Mrs. Monks.

The corporation rented one of the houses on Roque Island to Mrs. Monks for $2,500 per year and another to George Peabody Gardner for the same price. When the income of the corporation from various sources fell below the expenses of maintaining the islands, each member had to pay his share of the deficit. There seems to be no question that the corporation was intended to be a genuinely separate entity and not a mere alter ego of decedent. In fact it did function as a distinct entity. Regular meetings of the members and directors were held, the accounts and books of the corporation were regularly kept and the control and management of the Roque Island property were completely taken over by the corporation.

The formation of the corporation was not a scheme for the evasion of taxes by the decedent. The purported purpose of preserving the family homestead for the members of the family, and avoiding the problems involved in the division of the ownership among the numerous members of succeeding generations of the family was the prevailing and substantial motive which influenced the actions of the decedent.

The property which the government claims should be included in the estate of decedent passed to the corporation by a complete gift. The full legal and equitable title was in the corporation, and no interest in the property was reserved by Mrs. Monks. The claims of the United States must be based solely on the status of Mrs. Monks as a member and director of the corporation. The government does contend that because of that status she retained the enjoyment of the property, or at

least of some proportionate share of it until her death, that she had the right, in conjunction with the other members, to designate the persons to possess or enjoy the property, and that the enjoyment of the property was subject to a power of the decedent together with the other members to alter, amend, revoke or terminate.

The possession and enjoyment of the transferred property would seem to belong solely to the corporation once the gift had been completed. Thereafter, only the corporation had the right to use and dispose of the property and to receive the income produced by it. Indirectly, of course, the members of the corporation derive an advantage from the fact that the corporation owns this property. If a shareholder of an ordinary business corporation should transfer money or property to the corporation as a capital contribution, it would not seem that it could be seriously argued that he should be considered as retaining the possession and enjoyment of the property. Whatever economic benefit he indirectly received from the increased wealth of the corporation would be reflected in the increased value of the shares he held. There is no basis for a different result in the fact that Mrs. Monks' interest in the Roque Island Corporation is called a "membership" and is represented by no stock certificates.[2] As a result of the transfer involved here, that membership may have become more valuable. No issue is raised in this case, however, as to whether the value of that membership should be included in the decedent's estate. Only the inclusion of the transferred property is at issue here, and no enjoyment of that property was retained by Mrs. Monks.

The situation here resembles that in which the decedent has made an absolute transfer of property to another, retaining no interest in the property itself, and the transferee of the property has in return contracted to make certain payments to the transferor for the remainder of his life. In such cases it has been held that where the transfer was absolute and complete, and

---

2. That membership represents the sum total of all the advantage or benefit Mrs.

Monks derived from the corporation or property owned by the corporation.

the transferor retained no direct interest in the property, it could not be found that he retained any possession or enjoyment thereof. His contractual right to receive the payments was distinct from possession and enjoyment of the transferred property, even though it arose from the transfer transaction. Welch v. Hall, 1 Cir., 134 F. 2d 366, 369; Hirsh v. United States, 35 F. 2d 982, 985, 986, 68 Ct.Cl. 508. On the same principle, what Mrs. Monks had in this case was not the possession and enjoyment of the transferred property, but only a membership in the corporation.

The claimed right to designate the persons to possess and enjoy the property is based on the fact that under Article I of the by-laws the members have the right, when a membership terminates by death or otherwise, to fill the vacancy thus caused. But this gives only the right to confer membership in the corporation. As has been pointed out, whatever value this may have in itself arising from the fact that the corporation possesses and enjoys the transferred property, it is a right distinct from the possession and enjoyment belonging to the corporation. The power to confer such membership is no more the power to transfer the enjoyment of the corporation's property than would be the power to transfer ownership of the stock of the ordinary business corporation.

Moreover, even if Mrs. Monks did retain any enjoyment of the property transferred or any right to designate those who would possess or enjoy it, such enjoyment or such right would not come within the terms of § 811(c). That section speaks of "a transfer, by trust or otherwise, under which he has retained" the possession or enjoyment or right to designate the persons to possess or enjoy. That clearly requires that the right should be retained under the transfer. The language was not chosen inadvertently, for the following subsection (d)(1) contains a corresponding but significantly varied wording, speaking of "a transfer * * * where the enjoyment" was subject to specific change. In this case, the transfer was an absolute one. Decedent reserved no right whatsoever over the property given to the corporation. Any indirect interest she may thereafter have had, arose not from the transfer but solely from her membership in a previously existing corporation and from the charter and by-laws defining the rights of such members.

Defendant's argument that the enjoyment of the transferred property was subject to change by the exercise of a power by decedent together with the other members of the corporation to alter, amend, revoke or terminate is based on the provisions of Article VII of the by-laws, supra. Whatever the extent of the powers of the members under that article, it would seem to be no more than what they would in any case have under the law. A corporation has the inherent power to make and change the rules for its own government, subject to such limitations as may be imposed by statute. The statute under which this corporation was formed, Revised Statutes of Maine, Ch. 50,[3] gives it specifically the power to adopt by-laws not inconsistent with the law. There is nothing to indicate that this is simply a power to adopt one set of by-laws which are thereafter unchangeable. Rather it is a power to adopt by-laws from time to time even though these amend the existing by-laws. Article VII gives the members no power which they did not already possess under the law of Maine. It is not necessary to consider to what extent the law of Maine would permit the members of the corporation by distribution of assets, dissolution of the corporation, or otherwise to change the enjoyment of the transferred property for this, too, is merely the power which the state law confers. Inclusion of such property in the estate solely on the basis of powers given by the applicable state law is precluded by Helvering v. Helmholz, 296 U.S. 93, 97, 56 S.Ct. 68, 80 L.Ed. 76. This is recognized by Treasury Regulations 105, § 81.20 which provides: "The provisions of this section do not apply to a transfer if the power may be exercised only with the consent of all parties having an interest, vested or contingent, in the transferred property, and if the power adds nothing to the rights of the parties as conferred by the applicable

3. Formerly Ch. 70.

local law." Here, of course, the only party having an interest in the transferred property is the corporation to which it has been absolutely transferred, and any change would have to have the consent of the corporation given by the requisite vote of its directors or members, and no change could be made except such as already is authorized by the law of Maine.

The conclusion must be that Mrs. Monks made an absolute transfer of the property in question to the corporation, retaining no possession or enjoyment of it, and no power over it which would justify the inclusion of the property in her estate under 26 U.S.C.A. § 811.

Judgment in accordance with this opinion will be for the plaintiffs, with interest and costs.