RUBY LOUISE CAIN, TRANSFEREE OF THE ESTATE OF MARTHA KING DISBOROUGH, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84944. Filed November 13, 1961.

*Richard E. Aikman, Esq.*, for the petitioner.
*James D. Biltz, Esq.*, for the respondent.

---

OPINION.

FAY, *Judge:* The Commissioner determined a deficiency in estate tax of $2,391.58 in connection with the Estate of Martha King Disborough, deceased, hereinafter referred to as the estate. This proceeding involves the liability of the petitioner as transferee of the assets of the estate.[1] The only issue to be decided is whether the amount of $44,135, representing the balance due decedent at the time of her death under a sales contract with King's Indiana Billiard Company, Inc., should be included as part of her estate, when under the terms of the sales contract the purchaser's (King's Indiana Billiard Company, Inc.) remaining liability was to terminate upon the seller's death.

All of the facts have been stipulated, are so found, and are incorporated herein by reference. Those necessary to an understanding of our inquiry are recited below.

King's Indiana Billiard Company, Inc., now known and hereinafter referred to as King's, Inc., was engaged in the retail and wholesale restaurant supply business and in the sale of miscellaneous household furnishings. Prior to December 20, 1948, King's, Inc., had 1,600 shares of stock issued and outstanding, of which the decedent owned 600 shares; Claude King, the decedent's son and president of King's, Inc., owned 600 shares; and Edith King, Claude King's wife, owned 400 shares.

On December 20, 1948, King's, Inc., redeemed the decedent's stock and agreed to pay her the sum of $150,000. The contract provided as follows:

For value received, the undersigned, King's Indiana Billiard Company, Inc., promises to pay to Martha King Disborough the sum of $150,000.00, in the following installments.

$6,000.00, currently with the execution of this note.

$1,000.00 a month, beginning January 20, 1949, and continuing for 144 months, or until the balance of this note is otherwise discharged as herein provided.

This note is payable without interest except that any installment which becomes delinquent shall carry 6% interest from the scheduled date of payment until it is actually paid.

In the event of the death of the payee prior to the time that all of the installments provided herein have been paid, the entire balance on this note then owing and unpaid, other than for the two monthly installments maturing next after the death of the payee, shall be cancelled and discharged and thereafter shall not constitute an obligation of the maker. The two installments maturing next after the death of the payee shall, however, be paid in their regular scheduled order for payment.

This note evidences the purchase price of 600 shares of the common capital stock of the maker, all of which have been endorsed and delivered to the maker by the payee concurrently with the execution of this note and the maker, by

---

[1] The petitioner has conceded that if it is determined the estate is liable for the deficiency in estate tax the petitioner is liable as transferee.

executing this note, warrants that the same is executed pursuant to proper corporate authority in that respect.

Following the redemption of decedent's stock, the entire outstanding stock of King's, Inc., was owned by Claude and Edith King.

The decedent died on August 2, 1957, at which time the balance remaining due under the contract was $44,135. Pursuant to the terms of the contract, King's, Inc., made payment of the two installments maturing next after the death of the decedent.

An estate tax return for the estate of the decedent was timely filed with the district director of internal revenue, Indianapolis, Indiana. Included in the gross estate were the two installments paid by King's, Inc., following the death of the decedent. The Commissioner increased the gross estate by including therein the amount remaining unpaid under the contract as of the date of decedent's death. In support of this adjustment, respondent contends that what was intended by the agreement of December 20, 1948, whereby the purchase price was to be paid to the decedent in installments, was a transfer, in trust or otherwise, of the purchase price by the decedent to King's, Inc., with a retention by the decedent of a right to a return of the purchase price for a period which did not, in fact, end before her death. While the notice of liability sent to the petitioner referred to sections 2036 and 2037 of the Internal Revenue Code of 1954 as authority for respondent's position, on brief the respondent has seen fit to limit his contention and discussion solely to section 2036.[2]

We feel respondent's contention that the decedent made a transfer of the purchase price to King's, Inc., and retained a right to a return of the purchase price is untenable. The record is devoid of evidence tending to show that the decedent at any time obtained possession or control over the entire purchase price of $150,000; that King's, Inc., tendered the entire purchase price to decedent; that the purchase price was, in fact, segregated by King's, Inc., from its other assets; that the books and records of King's, Inc., reflected the receipt of the purchase price from the decedent; or that the corporation as of December 20, 1948, actually possessed cash or liquid assets totaling $150,000. In the absence of such evidence, we are unable to conclude that the substance of the transaction was something other than what was evidenced by the form of the transaction.

---

[2] Section 2036 provides, in part:

* * * The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, * * *

This Court is also of the opinion that section 2036 has no application to the transfer of the stock itself as distinguished from the aforementioned transfer of the purchase price. The decedent agreed to sell her stock in King's, Inc., to the latter corporation in return for an immediate payment of $6,000 plus monthly payments of $1,000 to continue for 12 years or until decedent's death, whichever occurred first. It is clear that the decedent divested herself of all title to and control over the stock, and King's, Inc., entered into immediate and complete possession of the property. Furthermore, there is no evidence that the monthly installments were chargeable to the transferred stock or that the payments were in any way related to the potential or expected earnings of the 600 shares specifically or to the profits of King's, Inc., generally. To the contrary, the obligation to pay was fixed and dependent solely upon the singular obligation of King's, Inc.

In *Fidelity-Phila. Trust Co.* v. *Smith*, 356 U.S. 274, 280 (1958), the Supreme Court in discussing the scope of section 811(c)(1)(B) of the Internal Revenue Code of 1939, which is the predecessor to section 2036, said:

> Where a decedent, not in contemplation of death, has transferred property to another in return for a promise to make periodic payments to the transferor for his lifetime, it has been held that these payments are not income from the transferred property so as to include the property in the estate of the decedent. E.g., Estate of Sarah A. Bergan, 1 T.C. 543, Acq., 1943 Cum. Bull. 2; Security Trust & Savings Bank, Trustee, 11 B.T.A. 833; Seymour Johnson, 10 B.T.A. 411; Hirsh v. United States, 1929, 35 F. 2d 982, 68 Ct. Cl. 508; cf. Welch v. Hall, 1 Cir., 134 F. 2d 366. In these cases the promise is a personal obligation of the transferee, the obligation is usually not chargeable to the transferred property, and the size of the payments is not determined by the size of the actual income from the transferred property at the time the payments are made.

Since we can find no significant distinction between the case at hand and the cases cited by the Supreme Court, we conclude that the decedent retained neither possession, enjoyment, nor the right to income from the transferred stock. Accordingly, we hold that the unpaid balance of the purchase price is not includible in the decedent's gross estate.

Because of the uncontested adjustments,

*Decision will be entered under Rule 50.*