## COMMISSIONER OF INTERNAL REVENUE v. MEYER et al.

### No. 9439.

Circuit Court of Appeals, Sixth Circuit.

Dec. 9, 1943.

Ray A. Brown, of Washington, D.C. (Samuel O. Clark, Jr., Sewall Key, and Warren F. Wattles, all of Washington, D. C., on the brief), for petitioner.

P. McKinley Harris, of Louisville, Ky., for respondent.

Before HICKS, HAMILTON, and Mc-ALLISTER, Circuit Judges.

258

HAMILTON, Circuit Judge.

On December 13, 1935, respondent, Peter H. Meyer, Jr., then fifty-nine years of age, paid $55,000 to the Prudential Insurance Company of America, and received from that company in form a single premium life insurance policy of $50,000 with respondent, Cordelia Meyer, his wife, as beneficiary, and in form an annuity contract, both on his life. The insurance company allocated $35,642 out of the $55,000 as the premium on the alleged life insurance policy and $19,358 to the purchase of the annuity. On December 30, 1935, on the written request of the insured, the insurance company cancelled the $50,000 policy and in lieu thereof, issued two policies with the same beneficiary, one for $36,000 and the other for $14,000, the new policies bearing date December 13, 1935. The insurance company then reallocated the $35,642 premium to the two policies of $36,000 and $14,000 in the amount of $25,662.24 and $9,979.76 respectively.

Under the annuity contract, the insurance company agreed to pay to the respondent, Peter H. Meyer, Jr., $1,573.81 annually during his lifetime, commencing December 13, 1936, and terminating with the last periodical payment before his death. In accordance with the terms of the contract, the insurance company paid respondent $1,573.81 during each of the tax years 1937 and 1938. Respondents filed joint income tax returns for 1937 and 1938 and in each of them reported $580.74 income out of the annual payments received from the insurance company. The sum reported each year was equal to three percent of the $19,358 which the insurance company had allocated as the purchase price of the annuity. The Commissioner included the entire sum received from the insurance company in the gross income of the respondent, Peter H. Meyer, Jr., for each of the years in question. The United States Tax Court reversed the Commissioner, from which decision this appeal is prosecuted.

Section 22(b) (2) of the Revenue Act of 1936, ch. 690, 49 Stat. 1648, Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 22(b) (2), excludes from gross income amounts received under a life insurance or endowment contract, but if such amounts exceed the aggregate premiums or consideration paid, then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income except there shall be excluded from such gross income the excess received in any taxable year over an amount equal to three percentum of the aggregate premiums or consideration paid, until the aggregate amount excluded from gross income on account of such payments equals the aggregate premiums or consideration paid.

The question we have here is whether the sums received by respondent were received as an annuity as that word is used in the applicable revenue statute or whether the sums received were interest upon the amount respondent had paid to the insurance company. The form in which the contracts were cast by the agreement of the parties is not determinative of the issue. Stearns Co. v. United States, 291 U.S. 54, 61, 54 S.Ct. 325, 78 L.Ed. 647; Aluminum Castings Co. v. Routzahn, 282 U.S. 92, 99, 51 S.Ct. 11, 75 L.Ed. 234. It is settled that neither of the contracts in question was an insurance agreement (Helvering v. Le Gierse, 312 U.S. 531, 541, 61 S.Ct. 646, 85 L.Ed. 996; Estate of Keller v. Commissioner, 312 U.S. 543, 545, 61 S.Ct. 651, 85 L.Ed. 1032), but this fact throws no light on the issue here. In the Le Gierse and Keller cases, the Supreme Court decided that proceeds of contracts with an insurance company of similar import to those with which we are here concerned were not insurance as that term was used in Section 302(g) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 231, but that the proceeds of the policies were taxable under Section 302(c) of the Revenue Act of 1926 as amended as a transfer to take effect in possession or enjoyment at or after death.

Decisions construing other statutes are authority where such statutes are identical or nearly identical in language or in principle with the one under review, but the dissimilarity between the object and purposes of the estate tax statute and the income tax statute with which we are concerned is so great that the decisions referred to have no application to the case at bar. An estate tax is measured by the capital of the estate, and an income tax is measured by the realized increment of capital or its avails. It is the duty of the court to look through the mere form of agreements in applying tax statutes and to rest their application upon the realities. It is generally accepted that a return of capital or investment is not taxable under the Sixteenth Amend-

ment. Burnet v. Logan, 283 U.S. 404, 414, 51 S.Ct. 550, 75 L.Ed. 1143; Southern Pac. Co. v. Lowe, 247 U.S. 330, 339, 38 S.Ct. 540, 62 L.Ed. 1142; United States v. Safety Car Heating Co., 297 U.S. 88, 99, 56 S.Ct. 353, 80 L.Ed. 500. It is sometimes difficult to determine whether receipts represent in whole or in part capital returned and in such cases rules of approximation are applied in determining taxable income. Names are but the arbitrary marks of conceptions and the phrase "an annuity under an annuity or endowment contract" as used in the present statute must be construed in the setting of its statutory purpose and in the light of the Sixteenth Amendment. It was clearly the purpose of the Congress, under this statute, to exclude from income the return of capital invested and for this purpose the statute adopts a rule of approximation.

Until respondent Meyer had returned to him a ratable part of his investment measured by the receipts therefrom, he had realized no taxable income under the statutes here in question. According to the facts the insurance company allocated $19,-358 out of the $55,000 to the annuity contract, and in consideration therefor, the insurance company agreed to pay respondent annually $1,573.81 or .0813 percentage of the original cost of the contract.

■ There is no actuarial testimony in the record, but we may take judicial notice of the fact that all of the sum paid to respondent was not interest because the percentage return was far in excess of that ordinarily earned on the investments of insurance companies.

■ From the facts there can be drawn only the inference that some part of the sums received by respondent was a return to him of his original investment. This characteristic distinguishes an annuity contract from an interest contract. It would be unreal for a person to purchase an annuity terminable at his death and receive only interest on the purchase price during his life. In the business world "interest" means compensation for the use or forbearance of money. In determining what is interest under the revenue statute, we assume that Congress used the word in the statute in the sense in which it is understood in the business world. Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416. In the case of interest in its usual acceptation, there is always a principal which remains intact with its return

to the lender not conditioned by his death. Likewise the obligation for interest in the usual sense, does not expire with death, but continues during the life of the contract.

Petitioner's contention is that respondent delivered to the insurance company $55,-000 and as consideration therefor the insurance company obligated itself to pay to the respondent interest by the way of an annuity during his life and the principal sum of $50,000 to his wife at his death, and that the bi-section of the agreement into the form of a life insurance policy and an annuity is to be ignored. This contention must be denied. To adopt it leads us into the field of unrealities.

■ Respondent, at the date of his payment to the insurance company, was fifty-nine years of age and had a life-expectancy, according to Wigglesworth's Tables, of sixteen years. The life tables were not in evidence but of them we may take judicial notice. City of Lincoln v. Power, 151 U.S. 436, 441, 14 S.Ct. 387, 38 L.Ed. 224. The insurance company allocated, out of the total premium, $35,642 to the so-called life insurance policy. Good actuarial practice required the insurance company to create and maintain a reserve to meet the payment due under the contract at the date of the death of respondent, and to say that any part of the sum respondent realized was interest paid on so much of the premium as was allocated to the so-called life insurance contract is to ignore the practical.

■ It patently was necessary that the insurance company accumulate earnings on that part of the sum paid to it by respondent Meyer to purchase the contract under which it was to pay $50,000 to respondent's wife at his death. The insurance company could not pay $50,000 out of a so-called premium allocation of $35,642 without accumulation from some source. Common sense plays its part in construing and applying taxing statutes. It is our opinion that, in applying the words chosen by the Congress for use in this statute, it would not be consonant with good judgment to hold that the Congress intended to treat the payments under the contract here in question as interest when they had the characteristics of a discharge of an obligation under an annuity contract. Bodine v. Commissioner, 3 Cir., 103 F.2d 982.

Decision affirmed.