FIDELITY-PHILADELPHIA TRUST CO. ET AL., EXECUTORS, *v.* SMITH, COLLECTOR OF INTERNAL REVENUE.

No. 130.   Argued January 30, 1958.—Decided April 28, 1958.

Robert T. McCracken argued the cause for petitioners. With him on the brief was John B. Leake.

Myron C. Baum argued the cause for respondent. With him on the brief were Solicitor General Rankin, Assistant Attorney General Rice and Harry Baum.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The question before the Court is whether the proceeds of certain insurance policies on the life of the decedent, payable to named beneficiaries and irrevocably assigned by the insured, should be included in the estate of the decedent for the purposes of the federal estate tax. The facts are not in dispute. In 1934 decedent, then aged 76, purchased a series of annuity-life insurance policy combinations. Three single-premium life insurance policies, at face values of $200,000, $100,000, and $50,000, respectively, were obtained without the requirement of a medical examination. As a condition to selling decedent each life insurance policy, the companies involved required decedent also to purchase a separate, single-premium, nonrefundable life annuity policy. The premiums for each life insurance policy and for each annuity policy were fixed at regular rates. The size of each annuity, however, was calculated so that in the event the annuitant-insured died prematurely the annuity premium, less the amount allocated to annuity payments already made, would combine with the companion life insurance premium, plus interest, to equal the amount of insurance proceeds to be paid.[1] Each annuity policy could have

---

[1] Of course, an additional amount is added to the premiums to compensate the insurance companies for expenses.

been purchased without the insurance policy for the same premium charged for it under the annuity-life insurance combination.

The decedent's children were primary beneficiaries of the insurance policies; the Fidelity-Philadelphia Trust Company, as trustee of a trust established by decedent, was named beneficiary of the interests of any of decedent's children who predeceased her. In the year of purchase, decedent assigned all rights and benefits under two of the life insurance policies to her children and under the other to the Fidelity-Philadelphia Trust Company as trustee. These rights and benefits included the rights to receive dividends, to change the beneficiaries, to surrender the policies, and to assign them. Dividends were received, but, as far as the record discloses, none of the other rights was exercised. A gift tax on these transfers was paid by the decedent in 1935. In 1938 decedent amended the above-mentioned trust so that it became irrevocable. As the Government concedes, the decedent retained no beneficial or reversionary interest in the trust.

The insured died in 1946. The proceeds of the three insurance policies were not included in her estate in the estate tax return. The Commissioner of Internal Revenue determined that these proceeds should have been included and assessed a deficiency accordingly. The adjusted tax was paid by the executors, and when claim for refund was denied, this action for refund followed. The District Court entered judgment for the taxpayers, but the Court of Appeals for the Third Circuit reversed. 241 F. 2d 690. We granted certiorari.[2] 354 U. S. 921.

---

[2] In agreement with the decision below are *Burr* v. *Commissioner*, 156 F. 2d 871 (C. A. 2d Cir.), and *Conway* v. *Glenn*, 193 F. 2d 965 (C. A. 6th Cir.). To the contrary is *Bohnen* v. *Harrison*, 199 F. 2d 492 (C. A. 7th Cir.), affirmed by an equally divided Court, 345 U. S. 946.

It is conceded by the parties that the question of whether the proceeds should be included in the estate is not determinable by the federal estate tax provision dealing with life insurance proceeds. Cf. *Helvering* v. *Le Gierse,* 312 U. S. 531. To support the decision below, the Government argues that the proceeds are includible in the estate under Section 811 (c)(1)(B) of the Internal Revenue Code of 1939, which includes, in the estate of the decedent, property, to the extent of the decedent's interest therein, which the decedent had transferred without adequate and full consideration, under which transfer the decedent

> "has retained for his life . . . (i) the possession or enjoyment of, or the right to income from, the property . . . ."

The Government contends that the annuity payments, which were retained until death, were income from property transferred by the decedent to her children through the use of the life insurance policies.

On the other hand, petitioners, executors of the estate, assert that the annuity payments were income from the annuity policies, which were separate property from the insurance policies, and that since decedent had assigned away the life insurance policies before death, she retained no interest in them at death.

The Government relies on *Helvering* v. *Le Gierse,* *supra,* where this Court also had before it the issue of the taxability of proceeds from a life insurance policy in an annuity-life insurance combination. After holding that the taxability of these proceeds was not to be determined for estate tax purposes according to the statutory provisions dealing with life insurance,[3] the Court held that

---

[3] Section 302 (g) of the Revenue Act of 1926, 44 Stat. 9, 71, exempted from the estate proceeds up to $40,000 "receivable . . . as insurance" by persons other than the executor. The proceeds in *Helvering* v. *Le Gierse* were not considered to have arisen from

the proceeds were includible in the estate under Section 302 (c) of the Revenue Act of 1926 because they devolved on the beneficiaries in a transfer which took "effect in possession or enjoyment at or after . . . death." 312 U. S., at 542. However, in reaching this conclusion the decision did not consider the problem in the case at bar, for in *Le Gierse* the insured had retained the rights and benefits of the insurance policy until death. The facts in the instant case on this point are fundamentally different. Prior to death, the decedent had divested herself of all interests in the insurance policies, including the possibility that the funds would return to her or her estate if the beneficiaries predeceased her.[4] The assignees became the "owners" of the policies before her death; they had received the right to the immediate and unlimited use of the policies to the full extent of their worth. The immediate value of the policies was always substantial. In the year of assignment their total cash surrender value was over $289,000; in the year of death it was over $326,000. Under the assignment, the decedent had not

---

"insurance" as Congress meant the word to be used because the ordinary "insurance risk" was not present. The insurance company had not undertaken to shift the risk of premature death from the insured and to distribute the risk among its other policyholders. On the contrary, by requiring a concurrent purchase of a nonrefundable annuity contract, the company had neutralized the risk at the expense of the "insured." The remaining risk, whether the annuitant would live beyond the actuarial prediction and after the insurance policy had been surrendered, was considered not an insurance risk but a risk of ordinary investment. Cf. Meisenholder, Taxation of Annuity Contracts under Estate and Inheritance Taxes, 39 Mich. L. Rev. 856, 883.

The principle that the proceeds are not considered "receivable . . . as insurance" applies whether at death the rights and benefits of the policies are in the hands of the insured or of another person. *Goldstone* v. *United States*, 325 U. S. 687, 690.

[4] Cf. *Goldstone* v. *United States, supra.*

become a life tenant who postpones the possession and enjoyment of the property by the remaindermen until her death.[5] Cf. *Helvering* v. *Bullard,* 303 U. S. 297; *Commissioner* v. *Estate of Church,* 335 U. S. 632. On the contrary, the assignees held the bundle of rights, the incidents of ownership, over property from which the decedent had totally divorced herself. Cf. *Chase National Bank* v. *United States,* 278 U. S. 327; *Goldstone* v. *United States,* 325 U. S. 687.

Illustrative of the distinction between *Helvering* v. *Le Gierse* and the case at bar is the fact that the Government has not endeavored here to sustain the tax under the statutory provision applied in that case. Instead of the provision taxing transfers "intended to take effect in possession or enjoyment at or after" the transferor's death,[6] the provision applied in *Le Gierse,* the Government relies on the provision taxing transfers in which the transferor has retained until death "the right to income from" the transferred property.[7] However, the Government's position that the annuities were income from prop-

---

[5] Nor are the assignees like second annuitants in survivorship annuities or joint annuitants in joint and survivor annuities. The donor's and donee's annuities have a common fund as the source so that if the source of the donor's annuity is extinguished, the donee's annuity is destroyed. The entire economic enjoyment of the second annuitant must, realistically speaking, await the death of the first annuitant, and a substantial portion of the surviving joint annuitant's enjoyment is similarly postponed. Cf., *e. g., Commissioner* v. *Wilder's Estate,* 118 F. 2d 281; *Commissioner* v. *Clise,* 122 F. 2d 998; *Mearkle's Estate* v. *Commissioner,* 129 F. 2d 386.

[6] Section 811 (c) (1) (C) of the Internal Revenue Code of 1939, as amended by Section 7 (a) of the Act of October 25, 1949, c. 720, 63 Stat. 891, 895.

[7] Section 811 (c) (1) (B) of the Internal Revenue Code of 1939, as amended by Section 7 (a) of the Act of October 25, 1949, c. 720, 63 Stat. 894. This provision was also a part of Section 302 (c) of the Revenue Act of 1926 at the time applicable in *Helvering* v. *Le Gierse.*

erty which the insured transferred to her children under the life insurance policies is not well taken.

To establish its contention, the Government must aggregate the premiums of the annuity policies with those of the life insurance policies and establish that the annuity payments were derived as income from the entire investment. This proposition cannot be established. Admittedly, when the policies were purchased, each life insurance-annuity combination was the product of a single, integrated transaction. However, the parties neither intended that, nor acted as if, any of the transactions would have a quality of indivisibility. Regardless of the considerations prompting the insurance companies to hedge their life insurance contracts with annuities, each time an annuity-life insurance combination was written, two items of property, an annuity policy and an insurance policy, were transferred to the purchaser. The annuity policy could have been acquired separately, and the life insurance policy could have been, and was, conveyed separately. The annuities arose from personal obligations of the insurance companies which were in no way conditioned on the continued existence of the life insurance contracts. These periodic payments would have continued unimpaired and without diminution in size throughout the life of the insured even if the life insurance policies had been extinguished.[8] Quite clearly the

---

[8] Where a decedent, not in contemplation of death, has transferred property to another in return for a promise to make periodic payments to the transferor for his lifetime, it has been held that these payments are not income from the transferred property so as to include the property in the estate of the decedent. *E. g., Estate of Sarah A. Bergan,* 1 T. C. 543, Acq., 1943 Cum. Bull. 2; *Security Trust & Savings Bank, Trustee,* 11 B. T. A. 833; *Seymour Johnson,* 10 B. T. A. 411; *Hirsh* v. *United States,* 68 Ct. Cl. 508, 35 F. 2d 982 (Ct. Cl. 1929); cf. *Welch* v. *Hall,* 134 F. 2d 366. In these cases the

annuity payments arose solely from the annuity policies. The use and enjoyment of the annuity policies were entirely independent of the life insurance policies. Because of this independence, the Commissioner may not, by aggregating the two types of policies into one investment, conclude that by receiving the annuities, the decedent had retained income from the life insurance contracts.[9]

Accordingly, the judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE BURTON, with whom MR. JUSTICE BLACK and MR. JUSTICE CLARK join, dissenting.

For the reasons stated by the court below, 241 F. 2d 690, and also in *Conway* v. *Glenn,* 193 F. ·2d 965, and *Burr* v. *Commissioner,* 156 F. 2d 871, it seems to me that, for federal estate tax purposes, this case is indistinguishable from one in which a settlor places a sum in trust under such terms that he shall receive the income from it for life, and the principal shall be payable to designated beneficiaries upon his death. As the principal, in that event, would be includable in the settlor's estate for federal estate tax purposes, so here the proceeds of the insurance policies should be included in this decedent's estate. Accordingly, I would affirm the judgment of the Court of Appeals.

---

promise is a personal obligation of the transferee, the obligation is usually not chargeable to the transferred property, and the size of the payments is not determined by the size of the actual income from the transferred property at the time the payments are made.

[9] For the treatment by lower courts of the life insurance-annuity combination in a similar situation in the field of federal income taxation, cf. *Commissioner* v. *Meyer,* 139 F. 2d 256; *Edna E. Meredith,* 1 T. C. M. 847, affirmed, *Helvering* v. *Meredith,* 140 F. 2d 973; *John Koehrer,* 4 T. C. M. 219.