Kate Lowther **DES PORTES**, as Administratrix C.T.A.D.B.N. of the Estate of Richard S. DesPortes, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. A. No. 5534.

United States District Court
E. D. South Carolina,
Columbia Division.

Jan. 21, 1959.

Marion Wannamaker, Robinson, McFadden & Dreher, Columbia, S. C., for plaintiff.

N. Welch Morrisette, Jr., U. S. Atty., William A. Horger, Asst. U. S. Atty., Columbia, S. C., Charles K. Rice, Asst. Atty. Gen., James P. Garland, Lyle M. Turner, James P. Saunders, Jack F. Blair, Attys., Dept. of Justice, Washington, D. C., for defendant.

TIMMERMAN, Chief Judge.

In this action the plaintiff seeks to recoup an estate tax deficiency amounting to $16,449.71 assessed against the estate of Richard S. DesPortes, deceased, and paid by said estate under protest on November 21, 1949.

In addition to the aforestated claim, the "Plaintiff seeks a refund of not only

this total amount, with interest, but the additional overpayment in tax with interest resulting from the deduction allowable for the payment of attorneys' fees in litigating this claim. As attorneys' fees are based on a percentage of principal and interest recovered, the exact amount of this additional overpayment in tax will be determined at the time judgment is entered." Page 2, Brief for Plaintiff.

As the case now stands the primary issue for decision is, whether or not the proceeds of two life insurance policies of $25,000 each, which were purchased more than 9 years before decedent's death in the name of his wife as owner, should be regarded as transfers in contemplation of death. Section 811(c), Internal Revenue Code of 1939, 26 U.S. C.A. § 811(c).

In the brief of the defendant, commencing at the top of page 3, the following statement of facts will be found:

"The decedent, Richard S. DesPortes, was born February 22, 1875. On March 2, 1936, the decedent's wife * * applied for two life insurance policies with the Equitable Life Assurance Society of the United States, * * *. On March 10, 1936, the Equitable Life Assurance Society of the United States issued life insurance policies Nos. 10,-038,984 and 10,038,986 on the life of Richard S. Desportes. (Ex. 1, pars. 4, 5.) On the same date, two annuity contracts Nos. 10,038,985 and 10,038,987 were issued by the Equitable Life Assurance Society to Richard S. Desportes. (Ex. 1, par. 6.) From January 1, 1936, to December 1, 1936, the rules of the Equitable Life Assurance Society of the United States permitted the issuance of a single premium life insurance policy, without requiring a medical examination of the insured, provided such single life insurance policy was issued in conjunction with a single premium annuity, and that the combined premiums were at least 110 percent of the face amount of the life insurance. (Ex. 1, par. 13; Ex. B.) The life insurance policies in question were issued on the condition that an annuity contract be purchased simultaneously and no evidence that the decedent could pass a medical examination of any kind was submitted to the Equitable Life Assurance Society of the United States. (Exs. 1, B.)

"On March 10, 1936, at the age of 61, the decedent, Richard S. Desportes, paid to the Equitable Life Assurance Society of the United States the sum of $36,679.50, as total cash premium for the life insurance policies No. 10,038,984 and 10,038,986. (Ex. 1, par. 3.) These policies listed the decedent's wife as owner with full power to change the beneficiary. (Ex. 1.) Decedent paid no gift tax with respect to these insurance policies. These policies were put in the name of decedent's wife as an investment because she never had any property in her own right and because they had young children at the time. (Tr. 22, 40.) There was no loan obtained on the policies. The cash surrender value was not obtained by the decedent's wife, the taxpayer herein. (Tr. 40–41; Ex. 1, par. 11.) The taxpayer testified that she had no need to cash the policies in because she was well provided for. (Tr. 40–41).

"On June 9, 1945, Richard S. Desportes died of cancer of the liver (Tr. 30–31) after being treated on May 13 of that year (Tr. 30). The face value of the two insurance policies was $50,000, plus additional insurance purchased by dividends of $60 and post mortem dividends totalling $41.82. (Ex. 1, par. 12.)

"On September 4, 1946, a federal estate tax return was filed for decedent's estate. (Ex. 1, par. 1.) A deficiency assessment was levied in the amount of $22,166.54 based upon the dual contention that the face value of the two life insurance policies ($50,000) was includible [in] decedent's estate as the right to income from the transferred property was reserved pursuant to Section 811 (c) (1) (B) of the Internal Revenue Code of 1939, and, secondly, as transfers in contemplation of death pursuant to Section 811(c) (1) (A) of the Internal Revenue Code of 1939. The Supreme

Court subsequently ruled in Fidelity-Phil[adelphia Trust] Co. v. Smith, 356 U.S. 274 [78 S.Ct. 730, 2 L.Ed.2d 765] that jointly purchased annuity and life insurance contracts as involved herein are not includible in the decedent's estate pursuant to Section 811(c) (1) (B) of the Internal Revenue Code of 1939.

"The taxpayer entered into a contingent fee arrangement with the attorneys representing her in this case whereby the attorneys are to receive one-third of any amount recovered prior to an appeal of the District Court's decision, and forty percent of any amount recovered after appeal. A deduction is claimed for the amount of attorneys fees attributable to prosecuting the claim for refund herein involved. (Compl. par. 12.) The Probate Court was petitioned for approval of those fees. (Tr. 31–32.)"

The foregoing statement needs some amplification and explanation, and the addition of a few other facts.

■ When decedent paid for the two policies of life insurance and they were delivered by the insurer to decedent's wife as the sole owner thereof, a gift was accomplished. The decedent could exercise no control over the policies. He could not change the beneficiary of either, but his wife, the owner of the policies, could and did. Moreover she could have taken the cash surrender value of the policies, but the decedent could not have done so.

While no gift tax return was filed by the decedent during his life, his legal representative, acting upon legal advice, did file such a return after his death.

Although the decedent, the donor, died of cancer in June, 1945, more than nine years after the issuance of the policies, he was in apparent good health and quite active at the time of the gift. His cancerous condition was not discovered until less than a month before his death. His latest prior need for medical attention was in 1925, twenty years before his death, when his appendix was removed and at that time there was not even a suggestion of a cancerous condi-

tion or other evidence of ill health. Moreover a reputable physician testified that the cancer was of quite recent origin.

Something is made of the fact that Mrs. DesPortes, the donee of the policies, did not convert the policies into cash as she might have done. But it takes some imagination to fancy how the use to which a donee puts or might put an absolute gift after its receipt indicates the motive of the donor in making the gift. Certainly such circumstance does not overcome the weight of the positive testimony that the gift was the result of a natural and normal desire on the part of the decedent to give his wife something that she could call her own and thus give her a feeling of security and independence. It is no argument against the existence of this normal desire of a husband, to say that the wife did not demand the cash surrender value of the policies after she had received them. That would have added nothing to her sense of security and independence. Besides it would have initiated the necessity of finding another investment, and she knew that her husband had sustained losses in prior investments. The testimony shows that both the husband and wife were concerned to make safe investments even if the return therefrom should be low.

It is my opinion that the evidence in this case does not warrant the inference that decedent's gift was made "in contemplation of his death." The evidence conclusively shows that decedent, at the time of the gift, was enjoying good health and had been since recovering from an appendectomy in 1925. He had passed two examinations for life insurance policies of $10,000 each after the appendectomy; one in 1926 and the other in 1928. Of course the fact that a donor is in good health does not necessarily mean that he cannot or will not dispose of his property "in contemplation of his death" any more than the mere fact that a donor is in bad health necessarily indicates that a gift by him is made in contemplation of death.

It is uncontradicted in the evidence that the decedent and his wife were a devoted couple, that they consulted together on matters with which each was concerned, that the wife had no estate of her own and consequently had a feeling of financial dependency which the decedent desired to remove by means of the gift of a safe investment. Such a purpose is inconsistent with the theory that decedent disposed of his property in contemplation of death rather than to accomplish his stated purpose.

In this connection it is worthy of note that neither the decedent nor his wife had legal advice during the negotiations with the insurance agent which ultimately led to the purchase of the life insurance policies for the wife and the annuities for decedent. It seems reasonable that, if decedent had been concerned with disposing of his property in contemplation of death, he would have sought legal advice—particularly the advice of a tax expert.

It may be argued that decedent would have made provision for his wife long before 1936 if he had been interested in giving her a sense of financial security and independence; and he probably would have done so if he had possessed the ready cash as he did in 1936. Shortly before the incident here in question, the decedent acquired a very large sum of money through the sale of a valuable piece of business real estate in the City of Columbia. It was then that he gave effect to his preconceived desire to make his wife financially secure.

In considering whether the decedent made a gift in contemplation of death, it also should be kept in mind that the insurance and annuity contracts were the work products of the insurance company —not that of the decedent or his wife. They simply bought what the insurance company had to sell on a take it or leave it basis.

One ground upon which the defendant first defended this case is "that the face value of the two life insurance policies * * * was includible [in] dece-dent's estate as the right to income from the transferred property was reserved pursuant to Section 811(c) (1) (B) of the Internal Revenue Code of 1939." Thereafter the opinion in Fidelity-Philadelphia Trust Co. v. Smith, 356 U.S. 274, 78 S.Ct. 730, 2 L.Ed.2d 765, was filed. The defendant has now abandoned that claimed defense. So what now remains for consideration, except the claimed allowance of a deduction for attorneys' fees incurred in prosecuting this action, is defendant's stated contention that the gift here in question was made in contemplation of decedent's death.

The legal principles applicable to such an issue necessarily must be couched in general terms, no fast or invariable rule has ever been devised by which such issues can be settled with complete assurance that the answer will always be correct. The applicable general principles of law concerning this issue are summarized in plaintiff's brief, as follows: "That a transfer in contemplation of death is a disposition of property prompted by the thought of death other than the general expectation of death everyone entertains, and that such thought of death is the impelling cause of, and the controlling motive for, the transfer; that the thought prompting the disposition is a question of fact to be determined from all the relevant circumstances; that the age and bodily and mental condition of the transferor are among the circumstances properly to be considered; and that a transfer induced by a living motive which is controlling would not be in contemplation of death. These principles are outlined in the opinion in the leading case of United States v. Wells, 283 U.S. 102 [51 S.Ct. 446, 75 L.Ed. 867]." See Allen v. Trust Co., 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367; Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35; Estate of Belyea v. Commissioners, 3 Cir., 206 F.2d 262, 263.

The defendant relies upon the case of United States v. Tonkin, 3 Cir., 150 F. 2d 531. The claimed applicability of

this case rests upon the unsupported assertion in the defendant's reply brief, that "The annuity contracts were purchased only because decedent decided he did not want to chance a medical examination and were purchased in order to obtain the life insurance with the face amount payable to decedent's wife coinciding with the date of his death." This is pure surmise. Moreover the controlling factor in the Tonkin case, as in Goldstone v. United States, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871, was the established fact of a reversionary interest in each. Something that isn't true in the instant case. At page 532 of 150 F. 2d in the Tonkin case, the court, speaking in reference to the decision in the Goldstone case, made it plain that the reversionary interest retained by the transferor was the basis for the court's opinion in the Goldstone case, and in the Tonkin case, using this language:

"It was pointed out that the decedent had retained not only the right to semi-annual payments under the annuity contract, but also a contingent reversionary interest in the entire proceeds of both contracts, so that the ultimate disposition of the proceeds of the contracts was suspended until the moment of his death. * * *

"The Supreme Court regarded as the *essential element* in the case the decedent's possession of *a reversionary* interest at the time of his death, delaying until then the determination of the ultimate possession or enjoyment of the property which, of itself, was deemed sufficient to support the imposition of the estate tax. * * *

"From the rationale of the opinion, as well as from the decision by the Supreme Court upon the narrated facts, we regard the Goldstone case as controlling authority here." (Emphasis added.)

It is unfortunate that the Congress, in the estate tax law, used the phrase, "in contemplation of death", without defining its intended meaning; and it is equally unfortunate that courts should undertake the legislative function of defining the legislative intent, which perhaps more often than not winds up with the statement of what the judge thinks he would have meant had he been the author of the legislation. The fact that every person of sound mind knows that he will eventually die, makes it indefinably difficult to determine when persons act in contemplation of death and when they do not. The best that can be said of such a decision is that the judge, having the duty of deciding, exercised his best judgment. The decision on such a problem is inherently difficult.

In this connection it should be noted that the law doesn't condemn or prohibit the making of gifts. Hence a conclusion that a gift was made in contemplation of death is not warranted when predicated on no more than the gift itself. Congress has enacted a gift tax.

I find as a matter of fact that the decedent did not make the questioned gift in contemplation of his death; that contemplation of death did not impel or control his action in making the gift; and hence, as a matter of law, that the estate tax was improperly assessed, and that plaintiff is entitled to recover it back with legal interest.

■ If the foregoing findings of facts and conclusions of law are correct, it follows as a matter of course that the estate tax should be further reduced to the extent that the attorneys' fees incurred or to be incurred in the prosecution of this case warrants.

Let plaintiff's attorneys submit an order for judgment that is consistent with this opinion.

It is so ordered.