**ESTATE of Maria BECKLENBERG, Deceased, Fred Becklenberg, Jr., Executor, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 12672.**

United States Court of Appeals Seventh Circuit.

Dec. 30, 1959.

Arthur Abraham, Chicago, Ill., for petitioner.

Charles K. Rice, Lee A. Jackson, L. W. Post, Washington, D. C., for respondent.

Before SCHNACKENBERG, PARKINSON [1] and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

This matter comes to us on petition for review of a decision of the Tax Court of the United States, respecting the gross estate of Maria Becklenberg, deceased, for federal estate tax.[2]

---

1. While Judge Parkinson participated in the hearing of oral arguments and a conference of the division judges above-named, he was not present at the time of, and did not participate in, the adoption of this opinion. He concurred in the result reached in this opinion.

2. The pertinent statutes and regulations include:

Internal Revenue Code of 1939:

"§ 811. Gross estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of

all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States— * * *

"(c) [as amended by Sec. 7(a) of the Technical Changes Act of 1949 (Act of October 25, 1949), c. 720, 63 Stat. 891, and Sec. 207(a), Technical Changes Act of 1953, c. 512, 67 Stat. 615] *Transfers in contemplation of, or taking effect at, death.*—

"(1) *General rule.* To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

* * * * *

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or

"(C) intended to take effect in possession or enjoyment at or after his death. "Subparagraph (B) shall not apply to a transfer made before March 4, 1931; nor shall subparagraph (B) apply to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

"(2) *Transfers taking effect at death —transfers prior to October 8, 1949.* An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term 'reversionary interest' includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term

does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. The value of a reversionary interest immediately before the death of the decedent shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Commissioner with the approval of the Secretary. In determining the value of a possibility that property may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such property may return to the decedent or his estate.

* * * * *

"(i) *Transfers for insufficient consideration.*—If any one of the transfers, trusts, interests, rights, or powers, enumerated and described in subsections (c), (d), and (f) is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent. * * *" 26 U.S.C. 1952 ed., Sec. 811.

Treasury Regulations 105, promulgated under the Internal Revenue Code of 1939:

"Sec. 81.83 *Property of decedent at time of death.*—It is designed by the foregoing provisions of the Internal Revenue Code that there shall be included in the gross estate all property of the decedent, whether real or personal, tangible or intangible, the beneficial ownership of which was in the decedent at the time of his death, except real property situated outside the United States.

* * * * *

"Sec. 81.15 [as amended by T.D. 5834, 1951–1 Cum.Bull. 72, 77] *Transfers during life.*—The following classes of transfers made by the decedent prior to his death, whether in trust or otherwise, if not constituting bona fide sales for an adequate and full consideration in money or money's worth, are subject to the tax: (1) transfers in contemplation of death (see section 81.16); (2) transfers intended to take effect in possession or enjoyment at or after the decedent's death (see section 81.17); (3) transfers under which the decedent reserved or retained (in whole or in part) the use, possession, rents, or other income or en-

joyment of the transferred property, for his life, or for a period not ascertainable without reference to his death, or for a period of such duration as to evidence an intention that it should extend to his death; including also the reservation or retention of the use, possession, rents, or other income, the actual enjoyment of which was to await the termination of a transferred precedent interest or estate (see section 81.18); (4) transfers under which the decedent retained the right, either alone or in conjunction with another person or persons, to designate who should possess or enjoy the property or the income therefrom (see section 81.19) and (5) transfers under which the enjoyment of the transferred property was subject at decedent's death to a change through the exercise, either by the decedent alone or in conjunction with another person or persons, of a power to alter, amend, revoke, or terminate, or where such a power was relinquished in contemplation of decedent's death (see sections 81.20 and 81.21).

\* \* \* \* \*

"The value of transferred property includible in the gross estate is the value thereof at the date of decedent's death, or if the executor has duly elected pursuant to the provisions of section 811(j) to have the value of the gross estate determined as of the dates therein prescribed, then the value will be that as of the applicable date or dates so prescribed (see section 81.11). If a portion only of the property was so transferred as to come within the terms of the statute, only a corresponding proportion of the value of the property should be included in ascertaining the value of the gross estate. If the transferee has made additions to the property, or betterments, the enhanced value of the property due thereto should not be included.

"To constitute a bona fide sale for an adequate and full consideration in money or money's worth the transfer must have been made in good faith, and the price must have been an adequate and full equivalent reducible to a money value. If the price was less than such a consideration, only the excess of the fair market value of the property (as of the date of decedent's death, or as of the applicable date under such an election as is mentioned in the last preceding paragraph) over the price received by the decedent should be included in ascertaining the value of the gross estate. For the purposes of the tax a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in decedent's property or estate, is not to any extent a consideration in money or money's worth.

\* \* \* \* \*

"Sec. 81.18 [as amended by T.D. 6073, 1954-2 Cum.Bull. 280, 282] *Transfers with possession or enjoyment retained.* Except in the case of a bona fide sale for an adequate and full consideration in money or money's worth, section 811(c) (1) (B) requires the inclusion in the gross estate of value of all property transferred by the decedent, whether in trust or otherwise, if the decedent retained or reserved the use, possession, right to the income, or other enjoyment of the transferred property (1) for his life; or (2) for any period not ascertainable without reference to his death; or (3) for such a period as to evidence his intention that it should extend at least for the duration of his life and his death occurs before the expiration of such period.

"Property shall not be included in the gross estate under this section unless transferred—

"(1) after March 3, 1931, and before June 7, 1932, and the retention or reservation by the decedent was (A) for his life or (B) for such a period as to evidence his intention that it should extend at least for the duration of his life, and his death occurs before the expiration of such period; or

"(2) on or after June 7, 1932.

"A reservation for a 'period not ascertainable without reference to his death' may be illustrated by a reservation of the right to receive, in quarterly payments, the income of the transferred property where none of the income between the last quarterly payment and the decedent's death was to be received by him or his estate. This expression also includes a reservation of the right to receive the income from transferred property after the death of another person who in fact survived the decedent; but in such case the amount to be included in the gross estate under this section does not include the value of the outstanding income interest in such other person. However, if such other person predeceased the decedent, the reservation may be considered to be for the decedent's life or for such a period as to evidence his intention that it should extend at least for the duration of his life.

"The use, possession, right to the income, or other enjoyment of the property will be considered as having been retained by or reserved to the decedent to the extent that during any such period it is to be applied towards the discharge of a

On March 17, 1934, decedent joined with her husband and son in establishing a Trust, to which each contributed assets then valued as follows:

| | | |
|---|---|---|
| Decedent | $379,166.37 | 26.78% |
| Fred Becklenberg, Sr. | 293,499.32 | 20.73% |
| Fred Becklenberg, Jr. | 743,186.56 | 52.49% |

No separate accounts were maintained. Several properties contributed by decedent were sold. No distribution was made. On August 12, 1938, the Trust was revoked and its assets transferred to a new Trust. This 1938 Trust provided for liquidation as expeditiously as possible and for purchase of annuities for specified members of the family, including one for decedent in the amount of $10,000 per year for life. Until purchase of the annuities, sums might be paid to the beneficiaries, not to exceed $10,000 annually in the case of decedent. No annuities were purchased during decedent's life. Certain payments were made to the beneficiaries, including payments not in excess of $10,000 annually to decedent.

. The taxpayer argues that decedent retained no right to income; that she, in effect, bought a right to an annuity; that the payments actually made to her (out of income of the Trust, though not out of income of the specific assets she contributed to the Trust) could have been terminated at any time by purchase of an annuity for her. In any event, taxpayer concludes that decedent retained no right "[1] for [her] life; or [2] for any period not ascertainable without reference to [her] death; or [3] for such a period as to evidence [her] intention that it should extend at least for the duration of [her] life and [her] death occurs before the expiration of such period," in the words of Treasury Regulations 105, promulgated under the Internal Revenue Code of 1939,

Section 81.18 (as amended by T.D. 6073, 1954–2 Cum.Bull. 280, 282.)

With respect to this argument the Tax Court held:

"The indisputable fact is that decedent received the right to annual payments of $10,000 from the 1938 trust until the trust purchased the annuity policy that would produce $10,000 annual payments from some insurance company. This is the way all of the donors construed the instrument and their interpretation was confirmed by the State Court. This is made abundantly clear by the claim for back payments made by decedent which was settled by the deed, the construction alleged in the interpretation suit, and the court decree, and the actual payment to decedent of $10,000 annually until she died. There is no merit in petitioner's argument that all decedent obtained under the 1938 trust was the right to compel the trustees to purchase an anuity that would give her annual payments of $10,000.00. The argument is foreclosed by the interpretation of the 1938 trust instrument by the donors and the Illinois Court."

The Superior Court of Cook County, Illinois, in Case Gen. No. 43–S–7734, construed the 1938 Trust in a suit brought in 1943 by Fred Becklenberg, Sr., as Trust Manager, and Fred Becklenberg, Jr., then sole Trustee. In their Com-

legal obligation of the decedent, or otherwise for his pecuniary benefit.

"If such retention or reservation is of a part only of the use, possession, income, or other enjoyment of the property, then only a corresponding proportion of the value of the property should be included in determining the value of the gross estate." (See Section 81.15.)

plaint, they stated that, in their interpretation of the 1938 Trust, decedent was entitled to annual payments of $10,000 until the annuity was purchased.

The Superior Court approved the actions, accounts, and interpretation of Fred Becklenberg, Sr., and Fred Becklenberg, Jr., and decreed (inter alia) that wide discretion was vested in the Trustee and the Trust Manager as to when, or whether, the annuities should be purchased; that, in view of changed conditions and circumstances, distribution to certain named members of the Becklenberg family need not be restricted to the purchase of life insurance annuities, but that the 1938 Trust Agreement authorized distribution to them, of income, principal or proceeds, "having due regard, however, to the preservation of sufficient of the principal or corpus of said Trust Estate to assure annual payments provided for under said Trust Agreement" including the $10,000 annual payment to decedent.

The Superior Court further provided, in connection with such distribution for certification that "the remainder of the principal or corpus of said Trust Estate is amply sufficient to assure the payments provided * * * to be made" including that to decedent. During the years 1940 through 1951, decedent did receive approximately $10,000 annually.

The Tax Court held that decedent had retained the right to receive annual distributions of $10,000 from the income of the 1938 Trust and that, therefore, the amount of corpus necessary to produce such income was includible in her gross estate for purposes of the federal estate tax. The Tax Court capitalized the annual payment of $10,000 by the average rate of return of income on the trust property (which the Tax Court found to be 0.03455%) or $289,855.07, to find the amount includible in the gross estate.

We agree that decedent (under the interpretation made by the Superior Court of Cook County) retained a right to receive $10,000 annually, by way of annuity or by distribution from the Trust. Although this sum was, in fact, paid to decedent out of the income of the Trust for most years, it does not appear that the payments were restricted to income. In 1942, in settling decedent's claim for deficiencies in payments previously made to her, a portion of the corpus was distributed to decedent with approval of the Superior Court. Under the 1938 Trust, payments might be made from principal. Under the construction of the Superior Court, decedent would have had to be paid $10,000 anually, even though the Trust produced an income of less than $10,000, and it had been necessary to invade corpus. Unlike the Tax Court, we believe that the Trust had an obligation to pay decedent $10,000 annually, and that her right to receive it was not limited to the property transferred by her or the income therefrom.

The Tax Court has computed the amount of the Trust assets to be includible in decedent's gross estate as though the Trust here required decedent to be paid $10,000 out of taxable income, whereas decedent could have been paid out of principal. She retained the right to receive $10,000 annually for life; she did receive $10,000 annually for life. Thus at her death, there was nothing left to be included in her gross estate.

The case before us is clearly distinguishable from the cases cited by the Commissioner. In both Estate of Moreno v. Commissioner, 8 Cir., 1958, 260 F.2d 389, and Toeller's Estate v. Commissioner, 7 Cir., 1948, 165 F.2d 665, the Trust provided for distribution of all income with a further provision for invading the corpus for specified emergencies.

Unlike the Commissioner and the Tax Court, as indicated above, we do see similarities between the case before us and the line of cases mentioned in Fidelity-Philadelphia Trust Co. v. Smith, 1958, 356 U.S. 274, 280–281 footnote 8, 78 S.Ct. 730, 733, 2 L.Ed.2d 765, where the Supreme Court said:

> "Where a decedent, not in contemplation of death, has transferred property to another in return for a promise to make periodic payments to the transferor for his lifetime, it has been held that these payments are not income from the transferred

property so as to include the property in the estate of the decedent. (Citing cases.) In these cases the promise is a personal obligation of the transferee, the obligation is usually not chargeable to the transferred property, and the size of the payments is not determined by the size of the actual income from the transferred property at the time the payments are made."

In Estate of McNichol v. Commissioner, 3 Cir., 1959, 265 F.2d 667, and other cases like it, cited by the Commissioner, the decedent purported to convey income-producing property without reservation, but actually did make contemporaneous oral agreements (or other arrangements) under which he was to receive the income, and under which he did, in fact, receive the income until his death.

Because of the basis on which this case has been determined, we do not reach various other questions respecting such matters as, for example, valuation of assets which decedent transferred to the Trust, or computation of the amount of corpus which would have been needed to produce an income of $10,000 annually, had decedent retained the right to receive payments of $10,000 annually, limited to income of the Trust.

Reversed.