Gerald W. RAY, Trustee and personal representative of the Estate of David L. Ray, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 84–4075.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1985.

Decided June 13, 1985.

Robert E. Kovacevich, Spokane, Wash., for plaintiff-appellant.

Raymond W. Hepper, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before GOODWIN, SCHROEDER, and BEEZER, Circuit Judges.

SCHROEDER, Circuit Judge.

The estate of David Ray brought this action in the district court to recover the estate tax and interest paid on a one-half interest in a trust established pursuant to a divorce settlement. The district court denied the refund. It held that the one-half interest was properly included in the estate pursuant to 26 U.S.C. § 2036(a) because the decedent retained a life estate in the property transferred to the trust, and the estate failed to prove that the transfer was a "bona fide sale for an adequate and full consideration in money or money's worth." 26 U.S.C. § 2036(a). Appellants argue that this transaction was a sale of property in consideration for an annuity rather than a transfer to a trust with a retained income interest. Because the parties to the transaction never described it as the purchase of an annuity and because it has none of the distinguishing characteristics of an annuity purchase, we affirm.

FACTS

The decedent, David Ray, and his former wife, Frances Ray, entered into a Property Settlement Agreement and Trust Agreement in 1959 as part of their divorce proceedings. The Trust Agreement provided that David Ray was to receive $400 a month for life, and Frances Ray was to receive $300 a month for life. These amounts were to be reduced by any sums the parties received from retirement and social security benefits or salary. If the

net income from the trust was insufficient to maintain the monthly payments, the trustee was authorized to invade principal as necessary to maintain the payments. Additionally, the trustee, in his discretion, could distribute additional funds from the principal "for the care, maintenance and health of either ... party." On the death of the last to die, the trustee was to distribute the trust corpus to the parties' children.

Frances died before David, who died testate in 1975. The Inventory and Appraisement filed in probate listed as property of the estate one-half of the assets of the trust; however, the Estate Tax Return failed to list this interest as property of the estate. The IRS audited the return, determined that one-half of the value of the trust was includable in the estate, and assessed $10,138.11 in estate tax and $994.78 in interest against the estate. The estate paid the amount and filed a claim for a refund which the IRS disallowed. The estate then filed this action in the district court.

The estate argued in the district court that no part of the trust was includable in the estate because the decedent received full and adequate consideration for the transfer, *i.e.*, release from his marital support obligations. The district court rejected the argument. On appeal, the estate has abandoned it. The estate now primarily asserts that the Trust Agreement is equivalent to an annuity contract for a specified monthly payment, and, therefore, the value of the trust corpus should be excluded from the decedent's gross estate.

## DISCUSSION

A taxpayer seeking a tax refund bears the burden of proving that the assessment was incorrect and proving the correct amount of the tax owed. *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct.

287, 291, 79 L.Ed. 623 (1935). The district court's factual findings will not be disturbed unless clearly erroneous. *Anderson v. City of Bessemer City*, —— U.S. ——, ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Its legal conclusions, however, are subject to de novo review. *McConney*, 728 F.2d at 1201.

Section 2036 of the Internal Revenue Code of 1954, 26 U.S.C. § 2036, includes in the value of a gross estate "the value of all property ... of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained" an income interest for life.[1] The general purpose of this section is "to include in a decedent's gross estate transfers that are essentially testamentary" in nature. *United States v. Estate of Grace*, 395 U.S. 316, 320, 89 S.Ct. 1730, 1733, 23 L.Ed.2d 332 (1969) (discussing the purpose of section 811(c)(1)(B) of the Internal Revenue Code of 1939 which was superseded by present section 2036). The district court held that this distribution of assets was essentially testamentary.

Substance, not form, governs our determination of whether this transaction should be regarded as a trust with a reserved life estate or a sale in exchange for an annuity. *Lazarus v. Commissioner*, 513 F.2d 824, 828 (9th Cir.1975). We have addressed this issue in several cases arising under a related statute, section 677 of the Internal Revenue Code, 26 U.S.C. § 677. *See Stern v. Commissioner*, 747 F.2d 555 (9th Cir.1984); *LaFargue v. Commissioner*, 689 F.2d 845 (9th Cir.1982); *Lazarus*, 513 F.2d 824. Although section 677 deals with the taxation

---

1. Section 2036 provides in pertinent part:

(a) *General rule.*—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or

money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property....

of income paid from a trust to its grantor, the court's analysis in those cases applies to our analysis under section 2036.

In *Lazarus,* we held that although the taxpayers had labeled the transaction a sale in exchange for an annuity, it was reasonable to characterize it in substance as a transfer to a trust with a retained life estate; therefore, the taxpayers, as owners of the trust, were liable for tax on the trust income. 513 F.2d at 829. The following factors supported the court's conclusion: (1) the property the taxpayers transferred to the trust was, in effect, the only source for their "annuity" payments; (2) since the trust's income was designed to equal the annual payments to the taxpayers, the "annuity" payments would not be paid from the trust corpus; and (3) the trust corpus would be available for "ultimate distribution to the trust beneficiaries." *Id.* at 829.

In *LaFargue,* on the other hand, we held that both the formal structure of the transaction and its substance supported the taxpayer's characterization of it as a sale in exchange for an annuity. 689 F.2d at 846. We emphasized that not only was the formal structure of the transaction that of an annuity obligation, but also that the amount of the annuity was not calculated to bear a "mathematical relationship" to the income of the trust. *Id.* Further, the taxpayer did not control the property transferred. *Id.* Distinguishing *Lazarus,* we noted that the trust corpus was available and partially used to pay the annuity. *Id.* The annuity payments were not simply a conduit for the trust income. *Id.* at 848. "As with any annuity taken in exchange for property, the risk of Taxpayer's early death lay with the taxpayer, whereas the risk of Taxpayer's late demise lay with the trust and its trustees." *Id.* at 850.

In *Stern,* we analyzed the transaction in light of *Lazarus* and *LaFargue* and held, as in *LaFargue,* that the taxpayers' characterization of the transaction as creating an annuity should be upheld. 747 F.2d at 558. The amount of the annuity was not tied to the trust's income.

Applying the factors we examined in *Stern, LaFargue* and *Lazarus,* we must conclude that this transaction was not an annuity arrangement. First, the parties did not formally structure it as one. On its face, the Trust Agreement purported to be a transfer to a trust with a retained income interest, not the purchase of an annuity. Nothing in the record indicates that the parties intended a sale in exchange for an annuity.

Second, the substance of this transaction reflects its form. Were this an annuity arrangement, one would expect the exhaustion of both income and principal over the life of the annuitant. *See Lazarus,* 513 F.2d at 829 n. 11. Here, however, the payments to the Rays closely approximated the trust's income. The parties apparently calculated the payments so that the trust corpus would remain intact because the trust operated at a breakeven point from its inception until Mr. Ray's death, at which time the trustee used principal to pay Mr. Ray's funeral expenses. This "tie" between the amount of the payments and the trust income is the most important characteristic which distinguishes this transaction from an annuity purchase. *Stern,* 747 F.2d at 558; *LaFargue,* 689 F.2d at 848 & n. 5; *Lazarus,* 513 F.2d at 829–30.

The estate argues that the transaction should be treated as a sale in exchange for an annuity because the trustee felt obliged to make the payments even if the income and principal would not support the payment. It relies on *Estate of Becklenberg v. Commissioner,* 273 F.2d 297 (7th Cir.1959), which characterized a sale in exchange for an annuity as a transaction in which the transferor has the right to receive payments even if the property transferred is exhausted. *Id.* at 301. The trustee in this case, however, had no legal obligation to make the payments if income and principal were exhausted. *Becklenberg,* therefore, does not support the estate's position. *See also United States National Bank of Portland v. United States,* 188 F.Supp. 332, 340 (D.Oreg.1960) (court refused to

treat trust agreement as an annuity contract because "[t]he trustee was only bound to pay so long as there was principal and income available.").

The estate's reliance on language in *Fidelity-Philadelphia Trust Co. v. Smith,* 356 U.S. 274, 78 S.Ct. 730, 2 L.Ed.2d 765 (1958), is similarly misplaced since there the Court stressed that payments of income from transferred property were excludable where they were "personal obligations of the transferee." The Court stated:

Where a decedent, not in contemplation of death, has transferred property to another in return for a promise to make periodic payments to the transferor for his lifetime, it has been held that these payments are not income from the transferred property so as to include the property in the estate of the decedent. In these cases the promise is a personal obligation of the transferee, the obligation is usually not chargeable to the transferred property, and the size of the payments is not determined by the size of the actual income from the transferred property at the time the payments are made.

*Id.* at 280 n. 8, 78 S.Ct. at 733 n. 8, 2 L.Ed.2d 765 (citations omitted). Here, the payments were chargeable solely to the transferred property and income therefrom; they were not personal obligations of the trustee. Moreover, it appears that the size of the payments was initially determined to approximate the expected income from the trust property. *See Lazarus,* 513 F.2d at 830.

The estate also argues that since the trustee's power to invade the principal is limited by an ascertainable standard, the trust corpus should be excluded from the decedent's estate. This argument is meritless since section 2036 unambiguously requires inclusion of decedent's trust interest in his gross estate.

The estate did not carry its burden of proving that the assessment was incorrect. The district court's judgment is AFFIRMED.