Estate of Lafayette **MONTGOMERY**, Deceased, et al., Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent-Appellee.

No. 71-3259.

United States Court of Appeals,
Fifth Circuit.

April 18, 1972.

M. E. Kilpatrick, Atlanta, Ga., for petitioners-appellants; Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., of counsel.

Scott P. Crampton, Asst. Atty. Gen., Tax Division, Dept. of Justice, Meyer Rothwacks, Loring W. Post, Attys., Tax Div., Dept. of Justice, Washington, D. C., K. Martin Worthy, Chief Counsel, Ray W. Sifly, Internal Revenue Service, Gary R. Allen, Dept. of Justice, Tax Div., Washington, D. C., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and SIMPSON and MORGAN, Circuit Judges.

PER CURIAM:

Consideration of the issues raised on this appeal requires that we apply the "any form of contract or agreement" standard of Section 2039 of the Internal Revenue Code of 1954, Title 26, U.S.C., Section 2039, to an effort through use of a sophisticated device to utilize a claimed loophole in the federal estate tax statutes and thereby considerably reduce estate tax liability. We determine that the United States Tax Court was correct in finding that the device employed changed the form and not the substance of the transaction in question, in upholding the deficiency assessed by the Commissioner of Internal Revenue.[1] We affirm the Tax Court's decision reported at 56 T.C. 489 (1971).

The decedent, Lafayette Montgomery, on May 4, 1964 was approaching his seventy-fifth birthday and suffered from advanced pulmonary emphysema, chronic bronchitis, arteriosclerosis, labile hypertension, and hepatitis, his major health problem being severe pulmonary insufficiency due to emphysema and chronic bronchitis. On that date he executed instruments creating two irrevocable trusts for the benefit of his grandchildren. The co-Trustees of each trust were his two sons and the Trust Company of Georgia. The following day he made application to the National Life Insurance Company (National) for a life annuity on his life at a purchase price of $2,200,000, and the trustees of each of the two trusts made written application (executed by the decedent as the proposed insured) for life insurance in the amount of $1,000,000 on the decedent's life. The decedent presented no evidence of insurability and was of course not insurable at standard rates.

One day later, May 6, National issued its nonrefundable annuity contract to the decedent providing for monthly payments during his life of $22,682 with no survivor benefits. The same day National issued the two life insurance policies applied for to the trustees of the respective trusts in the face amount of $1,000,000 each. The annuity required payment of a single premium of $2,200,000, its face amount plus 10%, and the amount of the first annual premiums on each of the two life insurance policies was $132,938. The decedent procured a bank loan on May 8 in the amount of $2,500,000 and deposited the net proceeds of $2,465,876 in his personal bank account. From this account he paid the single premium on the annuity and issued to each of the two trusts his check in the amount of $132,938. The latter amounts were immediately used by the trusts to pay the premiums on the insurance policies.

National regularly offers a combination nonrefundable annuity and life insurance policy plan whereunder life insurance policies are issued, as here, without proof of insurability. As to annual premium life insurance National permits the purchase of a life insurance policy provided the consideration paid for the annuity is equal to 110% of the face amount of the policy. Thus National incurs no insurance risk or risks of economic loss in such transactions since the annuity premium offsets the insurance policy proceeds and the annual premiums on the insurance policy offset the monthly payments under the annuity contract. Insurance policies would not have been issued without the purchase of the annuity contract since no evidence of the decedent's insurability

1. The Supreme Court's decision in Fidelity-Philadelphia Trust Company v. Smith, 1958, 356 U.S. 274, 78 S.Ct. 730, 2 L.Ed. 2d 765, does not compel a different result in this case. Fidelity-Philadelphia, supra, was decided under Section 811(c) of the Internal Revenue Code of 1939 (transfers with retained life estate), the successor to which is Section 2036 of the Internal Revenue Code of 1954. The Commissioner of Internal Revenue in the case now at bar did not proceed pursuant to Section 2036 in including the life insurance proceeds in the gross estate of the decedent, Lafayette Montgomery, but pursuant to Section 2039, a provision which had no counterpart prior to the enactment of the 1954 Internal Revenue Code. The language and requirements of the two sections differ substantially.

was submitted. Neither would the policies have been issued by National without the decedent's consent, which was required by Georgia law. The decedent's consent was evidenced by his witnessing the applications, though National had no concern with the identity of the named beneficiaries under the insurance policies so long as they were on the same life as the annuity contract.

The decedent died October 31, 1964, less than six months after the transactions above described. National paid the sum of $1,066,469 due under each of the policies to each of the trusts. The excess amount of $66,469 represented a refund of one-half of the annual premium paid on each policy.

A gift tax return for the year 1964 was filed by the taxpayer on behalf of the decedent on April 15, 1965, reporting as gifts the $132,938 given to each trust to pay the first annual premium on each policy. The estate tax return, filed January 31, 1966, also reported these amounts as transfers *inter vivos* subject to the estate tax and claimed a credit for the federal gift taxes paid with respect to the transfers. The sum of $2,465,876 representing the net proceeds of the bank loan obtained by the decedent to pay the premiums on the annuity and life insurance contracts was deducted as a debt of the estate. The amounts received by the trustees from the policies issued by National on the decedent's life were not included in the decedent's reported gross estate, but were specifically excluded on the asserted ground that the decedent had no interest in them.

The Commissioner of Internal Revenue did not question the claimed deduction pertaining to the estate's indebtedness to the bank. But the Commissioner determined that the proceeds ($2,132,-938) of the two life insurance policies were includible in the decedent's gross estate under the provisions of Section 2035 (transactions in contemplation of death) as well as Section 2039 of the Internal Revenue Code of 1954. The Tax Court held the proceeds includible

under Section 2039 and found it unnecessary to consider the question of applicability of Section 2035.

On this appeal the taxpayer argues that the Tax Court was in error when it found as factual matters that:

1. Prior to the purchases of the annuity-insurance combination plan in this case, National, decedent, and the trustees of the trusts entered into an understanding and agreement with respect to the above transactions relating to the issuance of both the annuity and the life insurance policies.

2. That the decedent gave his consent to the issuance of the two policies of insurance on his life by paying the first annual premium on each through the trusts as conduits.

3. That there was a single investment contract between the decedent and National Life Insurance Company.

Regarding the Tax Court's legal conclusion, the taxpayer disputes the includibility of the proceeds of the two life insurance policies under Section 2039.

■■■ Our scope of review of the decisions of the Tax Court under Title 26, U.S.C., Section 7482(a), is "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury". Applying the "clearly erroneous" test of Rule 52 (a), F.R.Civ.P., to the facts found by the Tax Court, we perceive no reason to disturb those findings of fact. Given these factual findings, no error is demonstrated in the Tax Court's holding that the proceeds of the insurance policies were includible in the decedent's gross estate under Section 2039 of the Internal Revenue Code. In this posture of the case we agree with the Tax Court that it is unnecessary to consider whether or not the proceeds are also includible under Section 2035 of the Internal Revenue Code.

The decision of the Tax Court is

Affirmed.